FILED

2018 Mar-09  AM 11:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| BRADLEY HESTER, on behalf of himself and those similarly situated, | ) ) ) |
| Plaintiff; | ) ) ) |
| v. | ) ) ) |
| MATT GENTRY, in his official capacity as Cullman County Sheriff, | ) ) ) |
| LISA MCSWAIN, in her official capacity as Circuit Clerk, | ) ) ) |
| AMY BLACK, in her official capacity as Magistrate of the Cullman County District Court, | ) ) ) ) |
| JOAN WHITE, in her official capacity as Magistrate of the Cullman County District Court, | ) ) ) ) |
| KIM CHANEY, in his official capacity as the District Court Judge of the Cullman County District Court, and | ) ) ) ) |
| RUSTY TURNER, in his official capacity as the District Court Judge of the Cullman County District Court, | ) ) ) ) |
| Defendants. | ) ) ) |

Case No. 5:17-cv-00270-MHH

(Class Action)

## **INTERVENOR COMPLAINT**

### I.     PRELIMINARY STATEMENT

1.      Defendants Cullman County Sheriff Matt Gentry ("Gentry"), Circuit Court Clerk Lisa McSwain ("McSwain"), Magistrates Amy Black ("Black") and Joan White ("White"), and District Court Judges Kim Chaney ("Chaney") and Rusty Turner ("Turner") are operating a two-

tiered pretrial justice system.   Secured financial conditions of release are required for misdemeanor and felony offenses pursuant to a predetermined bail schedule that specifies a monetary range based only on the charge.   A person arrested for a misdemeanor or felony offense who can afford the monetary amount is released from jail immediately upon payment. Those arrestees who cannot afford the monetary amount may remain in jail for weeks before they are afforded a hearing to argue for their release.   How quickly—or whether—a person is released from jail depends entirely on her access to money.

2.     Pursuant to this discriminatory scheme, individuals remain detained for varying lengths of time.   How long presumptively innocent arrestees remain in jail after arrest depends on whether they or their families are able to pay, to borrow sufficient resources, or to arrange for a third-party surety.   Others, like Mr. Hester, who are too poor to pay and unable to find anyone to pay the secured money bond for them, remain in jail for the entire duration of their case.

3.     Mr. Hester was arrested on July 27, 2017, and charged with possession of drug paraphernalia and is currently incarcerated because he cannot afford to pay the $1,000 bond required by the bail schedule.   If he could pay the amount, he would be released from jail immediately.

4.     On behalf of himself and all others similarly situated, Mr. Hester seeks declaratory relief and injunctive relief.   Mr. Hester seeks an injunction against Sheriff Gentry from prospectively jailing arrestees unable to pay secured monetary bail without an individualized hearing with adequate procedural safeguards that includes an inquiry into and findings concerning their ability to pay, the suitability of alternative non-financial conditions of release, and a finding on the record that any conditions of release are the least restrictive

conditions necessary to achieve public safety and court appearance.  He seeks declaratory relief against Defendants McSwain, Black, White, Chaney, and Turner.

## II.    **JURISDICTION AND VENUE**

4.      This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, et seq., and the Fourteenth Amendment to the United States Constitution.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## III.    **PARTIES**

**A.    Plaintiff**

6.      Plaintiff Bradley Dewayne Hester is a resident of Cullman, Alabama.

**B.    Defendants**

7.      Defendant Matt Gentry is the Cullman County Sheriff.  He is sued in his official capacity.

8.      Defendant Lisa McSwain is the Circuit Court Clerk for Alabama's 32nd Judicial Circuit Court.  She is sued in her official capacity.

9.      Defendant Amy Black is the Magistrate for the Cullman County District Court. She is sued in her official capacity.

10.      Defendant Joan White is the Magistrate for the Cullman County District Court. She is sued in her official capacity.

11.      Defendant Kim Chaney is a Cullman County District Court Judge.  He is sued in his official capacity.

12.     Defendant Rusty Turner is a Cullman County District Court Judge.  He is sued in his official capacity.

## IV.     STATEMENT OF FACTS

**A.      Defendants' Money Bail Practices Detain People Based on Their Wealth Rather Than Their Suitability for Release.**

**i.  Defendants Unconstitutionally Detain People Unable to Pay Secured Money Bail Set Pursuant to the Predetermined Bail Schedule.**

13.     One out of every five people in Cullman County lives in poverty.[1]

14.     Only 4 percent of the population over the age of sixteen worked full-time year-round in 2015, the last year for which data is available.[2]

15.     Nearly one out of four people did not work at all in 2015.[3]

16.     The Sheriff requires any person arrested and charged with a misdemeanor or felony offense to pay a secured amount of money bail (i.e. cash, commercial surety, or property) to be released from jail following arrest.

17.     The amount of money that an arrestee must pay is pre-determined by a bail schedule.

18.     The bail schedule specifies a monetary range based only on the charge.  It does not contemplate consideration of a person's financial resources or whether any alternative non-financial conditions of release may mitigate any relevant risk.

---

[1] U.S. Census Bureau, *Poverty Status in the Past 12 Months: 2011-2015 American Community Survey 5-Year Estimates, available at* https://goo.gl/CrVQ66.
[2] *Id.*
[3] *Id.*

19.     Immediate access to money alone determines whether a person remains in jail following arrest.  If a person can pay the amount required, the individual is released from jail immediately.  If the person is unable to pay, she remains incarcerated.

ii.     **Defendant Gentry Detains Arrestees Who Cannot Pay the Predetermined Money Bail Amount While Releasing Those Who Can Pay.**

20.     When a person is arrested in Cullman County, she is booked into the Cullman County Jail, which is operated by the Sheriff's Department.  Sheriff Matt Gentry is responsible for the operation of the Cullman County jail and the release and detention of arrestees.

21.     After booking, arrestees are informed by Sheriff's Department employees of their bail amount.

22.     The Sheriff determines the required amount of money by referring to the bail schedule.

23.     As Sheriff Gentry explained, "When someone comes into the jail, we have a chart we go by to set the bonds.  You can't go outside the scope of the range; you have to be within the bond range.  We bring in 30 people a day; those 30 won't go see the judge that day.  But we already know what the bond amount's going to be when they come in.  When you come in on possession of a controlled substance, $5,000; trafficking, $1 million."[4]

24.     Arrestees who do not have other restrictions on their eligibility for release can pay this amount themselves, make a phone call to ask a friend or family to pay this amount on their behalf, or contact a bonding agent to assist in posting bail.  If an arrestee can afford to pay the predetermined bail, the Sheriff's Department accepts the money and releases her.

---

[4] W.C. Mann, *Bail Bonds, Part 2: The Law Enforcement Perspective*, The Cullman Tribune (Feb., 2017), https://goo.gl/okgWP8.

25.     Although a person with financial resources will be released almost immediately after posting bail, the Sheriff's Department will continue to detain a person who cannot afford to pay the pre-set secured bail amount.

26.     Defendant Gentry maintains this policy and practice even though he receives no notice that there has been an inquiry into a person's ability to pay the amount set, findings that the person can afford to meet the financial conditions of release, and consideration of alternative non-financial conditions of release.

27.     Defendant Gentry's policy and practice of detaining people who cannot meet their financial conditions of release results in systematic wealth-based detention in Cullman County.

28.     Indeed, Defendant Gentry sees his role as using the money bail system "to keep criminals off the street"[5] and has promised to do "everything within that bond schedule to keep [people] in jail."[6]

### iii.     Defendants Black, White, Chaney, and Turner Do Not Review the Predetermined Financial Conditions of Release for Weeks or Months.

29.     Defendants Chaney and Turner are responsible for setting policies governing release conditions, *see* Ala. Code § 15-13-103.

30.     Magistrates Black and White enforce these policies and conduct an initial appearance for any person who cannot afford the monetary amount required by the bail schedule. The arrestee remains in jail for the initial appearance and is not brought to the courthouse. Instead, the first appearance is conducted electronically via FaceTime on an iPad from the Cullman County District Court.

---

[5] Benjamin Bullard, *Sheriff explains bond system as lawsuit looms*, The Cullman Times (July 16, 2017), https://goo.gl/F3ZxSd.

[6] W.C. Mann, *Drug Trafficking Defendants Sue County Officials: Sheriff Responds*, The Cullman Tribune (July, 2017), https://goo.gl/gQXYPx.

31.     Under Alabama law, a judge or magistrate is required to conduct the initial appearance within 48-hours following a warrantless arrest or 72-hours following a warrant arrest. Ala. R. Crim. P. 4.3(a)(1)(iii), (b)(2)(i).  The purposes of the initial appearance under state law are to (1) ascertain the defendant's true name and address, (2) inform the defendant of the charges against him, and (3) notify the defendant of the right to counsel.  Ala. R. Crim. P. 4.4.  A judicial officer is also required to determine a defendant's conditions of release.  *Id.*; Ala. R. Crim. P. 7.4 ("If a defendant has not been released from custody and is brought before a court for initial appearance, a determination of the conditions of release shall be made.").

32.     However, it is Defendants Black's, White's, Chaney's, and Turner's general practice to not allow arrestees to make arguments about their ability to pay or their suitability for release at the initial appearance.  Pursuant to Defendants Black's and White's policy and practice, arrestees are not permitted to challenge their financial conditions of release or to request non-monetary conditions of release.   Indeed, in her ten years as a magistrate, Defendant Black cannot recall a time when she reviewed the bail amount at the initial appearance.[7]

33.     Defendants are unrepresented by counsel at the initial appearance.

34.     At the initial appearance, Defendants Black and White do not make any findings that a person can afford the pre-set amount required or that secured money bail is the least restrictive condition of release available.

35.     At the initial appearance, Defendants Black and White also do not consider whether an arrestee may be safely released on affordable financial or non-financial release

---

[7] Transcript of Oral Argument at 20:10-15, *Lee v. Gentry*, No. CV-2017-900027 (Feb. 1, 2017).  Doc. 31-2.

conditions, nor do they make any affirmative inquiry into or findings concerning arrestees' ability to pay the amount of secured money bail required.

36.     Because of these practices, the initial court appearance provides no opportunity for a person to raise ability to pay, to be heard on alternative conditions of release, or to raise any constitutional issues with ongoing post-arrest detention.

37.     An arrestee's financial conditions of release are not reviewed at all if the person cannot afford money bail.  Indeed, an arrestee's financial conditions of release are *only* reviewed if a person files a motion for a bond reduction, which is generally scheduled for a hearing no earlier than two weeks after a person's arrest and as long as two months later.

38.     Thus, an individual who cannot afford the predetermined secured money bail amount usually will be detained for weeks or months without any opportunity for an individualized release hearing or to otherwise raise any issues concerning her ability to pay or her suitability for release under alternative conditions.

39.     By contrast, an arrestee who can pay the monetary amount required by the bail schedule is released immediately from jail.

40.     Defendants' reliance on predetermined secured money bail has resulted in unnecessary wealth-based detention that is devastating for the poorest people in Cullman County.  Many people in the Cullman County jail have not been convicted of a crime and are only in jail because they cannot afford to pay secured money bail.

**B.     Plaintiff Hester Cannot Afford the Monetary Amount Required by the Bail
         Schedule.**

41.     Mr. Hester is a 35-year-old man who lives in Cullman, Alabama.

42.     On August 27, 2017, Mr. Hester was arrested for possession of drug paraphernalia, a misdemeanor.

43.     Mr. Hester was taken to the Cullman County Jail and told that he would be released from jail only if he paid a $1,000 bond.

44.     A day or two after his arrest, Mr. Hester had his initial appearance via video link between the jail and the courtroom.  He was unrepresented by counsel at this hearing, which lasted for one to two minutes in total.  The magistrate informed Mr. Hester of the charge against him and his bond amount.  At no point during this brief hearing did the magistrate inquire into Mr. Hester's ability to pay the secured financial condition of release that she had imposed or give him the opportunity to say he could not pay it.  The magistrate did not ask him any questions at all or tell him when his next court appearance would be. Although the magistrate told him that he could apply for an attorney, a correctional officer told him that he did not need an attorney because he was only charged with a misdemeanor.

45.     Mr. Hester is indigent and cannot afford to buy his release from jail.  He has no assets, no real property, and no stable income.  For the last two years, he has supported himself by working odd jobs.

46.     Mr. Hester currently has an open wound from a spider bite on his hand.  The wound is very painful and is dripping blood.  Mr. Hester cannot obtain medical care for his wound because he cannot afford it.

47.     Mr. Hester is sleeping on the floor of his jail cell because there are three people in the cell but only two beds.

48.     Mr. Hester has not been told when his next court appearance will be, but he believes it will be in about a month.

**C.    Non-Financial Conditions of Release Alone or in Combination with Unsecured Money Bail Are As Effective As or More Effective than Secured Money Bail.**

49.    Detention on money bail increases the likelihood of conviction.  Controlling for other factors, a person who is detained pretrial is 13% more likely to be convicted and 21% more likely to plead guilty than a person who is not detained.[8]

50.    Studies show that those detained pretrial face worse outcomes at trial and sentencing than those released pretrial, even when charged with the same offense.[9]  Controlling for other factors, those detained pretrial will be given longer jail sentences.[10]  Detained defendants are more likely to plead guilty just to shorten their jail time, even if they are innocent.[11]  They have a harder time preparing a defense, gathering evidence and witnesses, and meeting with their lawyers.  A person's ability to pay money bail thus has an irreparable impact on the outcome of a criminal case.

---

[8] Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes* 18 (May 2, 2016) (finding that a person who is detained pretrial is 13% more likely to be convicted and 21% more likely to plead guilty than a person who is not detained), *available at* https://goo.gl/riaoKD; *see also* Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* 15, 19 (May 2, 2016), *available at* https://goo.gl/OW5OzL (finding a 12 percent increase in the likelihood of conviction using the same data).

[9] Christopher T. Lowenkamp *et al.*, *Investigating the Impact of Pretrial Detention on Sentencing Outcomes*, Laura and John Arnold Foundation 4 (November 2013), *available at* https://goo.gl/FLjVZP (those detained for the entire pretrial period are more likely to be sentenced to jail and prison—and receive longer sentences—than those who are released at some point before trial or case disposition).

[10] *Id.*

[11] Stevenson, *supra* note 1 at 18 ("Pretrial detention leads to an expected increase of 124 days in the maximum days of the incarceration sentence, a 42% increase over the mean."); *see also* Gupta, et. al, *supra* note 1, at 18–19 ("Criminal defendants assessed bail amounts appear frequently unable to produce the required bail amounts, and receive guilty outcomes as a result. Entered guilty pleas by defendants unwilling to wait months prior to trial and unable to finance bail likely contribute to this result.").

51.     Wealth-based pretrial detention also makes the community less safe.   First, wealth-based detention unnecessarily jails those who could be released safely into the community.   Several studies have shown that just two or three days in pretrial detention increases the likelihood of future crimes, as well as the future risk level of even low-risk defendants.[12]   In other words, detention based on poverty for just a few days *increases* recidivism.   Second, wealth-based pretrial systems release individuals based only on their ability to pay and without any assessment of their risk of flight or dangerousness.   Consequently, individuals who need monitoring or supervision to mitigate their risk of flight or dangerousness receive neither.

52.     Pretrial detention causes instability in employment, housing, and care for children and other dependent relatives.   It hurts families, leads to unemployment, and can make people homeless.   Even a couple of days in pretrial detention can cause a person to lose housing, be removed from a shelter list, be terminated from a job, be exposed to unsafe and unsanitary conditions at the jail, and may result in serious trauma to dependent children.

---

[12] *See* Department of Justice, National Institute of Corrections, *Fundamentals of Bail*, 15-16 (2014), *available at* https://goo.gl/jr7sMg ("[D]efendants rated low risk and detained pretrial for longer than one day before their pretrial release are more likely to commit a new crime once they are released, demonstrating that length of time until pretrial release has a direct impact on public safety."); Christopher T. Lowenkamp *et al.*, *The Hidden Costs of Pretrial Detention*, Laura and John Arnold Foundation, 3 (November 2013) GQGNiY (studying 153,407 defendants and finding that "when held 2–3 days, low risk defendants are almost 40 percent more likely to commit new crimes before trial than equivalent defendants held no more than 24 hours"); Paul Heaton *et al*., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stan. L. Rev. 711, 768 (2017), *available at* https://goo.gl/Waj3ty ("While pretrial detention clearly exerts a protective effect in the short run, for misdemeanor defendants it may ultimately service to compromise public safety," and finding that in a representative group of 10,000 misdemeanor offenders, pretrial detention would cause an additional 600 misdemeanors and 400 felonies compared to if the same group had been released pretrial).

53.     The empirical evidence demonstrates that there is no significant relationship between requiring money bail as a condition of release and arrestees' rates of appearance in court.[13]

54.     Other jurisdictions throughout the country do not keep people in jail based on their wealth.  Instead of relying on money, these jurisdictions release arrestees with unsecured financial conditions, non-financial conditions, and pretrial supervision practices and procedures that can help increase court attendance and public safety without requiring detention.

55.     Other jurisdictions employ numerous less restrictive, non-monetary conditions of release to maximize public safety and court appearances.  Such non-monetary conditions of release include, but are not limited to: unsecured bond, reporting obligations, phone and text message reminders of court dates, rides to court for those without transportation or a stable address, substance abuse treatment, mental health treatment, counseling, alcohol monitoring devices, or, in extreme cases of particular risk, electronic monitoring and home confinement.

56.     Jurisdictions that rely on pretrial services and non-monetary conditions of release do not sacrifice public safety or court attendance.  For example, Washington, D.C. releases more than 94% of all defendants without financial conditions of release and no one is detained on secured money bail that they cannot afford.[14]  Empirical evidence shows that nearly 90% of

---

[13] *See, e.g.*, Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* 21 (May 2, 2016), *available at* https://goo.gl/OW5OzL ("Our results suggest that money bail has a negligible effect or, if anything, increases failures to appear."); Michael R. Jones, *Unsecured Bonds: The As Effective and Most Efficient Pretrial Release Option* 11 (October 2013) *available at* https://goo.gl/UENBKJ ("Whether released defendants are higher or lower risk or in-between, unsecured bonds offer the same likelihood of court appearance as do secured bonds").

[14] *See* D.C. Code § 23-1321; *see also* Pretrial Services Agency for the District of Columbia, *Release Rates for Pretrial Defendants within Washington, DC available at* https://goo.gl/VSDeDk ("In Washington, DC, we consistently find over 90% of defendants are

released defendants in Washington, D.C. make all court appearances, nearly 90% complete the pretrial release period without any new arrests, and 98-99% consistently avoid re-arrest for violent crime.[15]

57.     The federal judiciary also eschews wealth-based detention, requiring any detention order to be based on a finding of dangerousness or flight risk, and the practice has not harmed court appearance rates or public safety.[16]

58.     Pretrial detention based solely on wealth is consistently more expensive than effective pretrial supervision programs.[17]  Without relying on a person's ability to afford cash bail, pretrial supervision programs can save taxpayer expense while maintaining high public safety and court appearance rates.

---

released pretrial without using a financial bond").

[15] *See* Pretrial Services Agency for the District of Columbia, *Outcomes for Last Four Years*, *available at* https://www.psa.gov/?q=node/558; Pretrial Just. Inst., *The D.C. Pretrial Services Agency: Lessons from Five Decades of Innovation and Growth* 2 (2009), *available at* https://goo.gl/6wgPM8  ("The high non-financial release rate has been accomplished without sacrificing the safety of the public or the appearance of defendants in court.  Agency data shows that 88% of released defendants make all court appearances, and 88% complete the pretrial release period without any new arrests.").

[16] *See* 18 U.S.C. § 3142(c)(2) ("The judicial officer may not impose a financial condition that results in the pretrial detention of the person."); *see also* Thomas H, Cohen, *Pretrial Release and Misconduct in Federal District Courts, 2008-2010*, Bureau of Justice Statistics Special Report 13 (Nov. 2012), *available at* https://goo.gl/hN99E7 (finding from 2008 to 2010, only 1% of federal defendants released pretrial failed to make court appearances and 4% were arrested for new offenses).

[17] *See, e.g.,* Pretrial Justice Institute, *Pretrial Justice: How Much Does It Cost?* (Jan. 11, 2017), *available at* https://goo.gl/0lLtLM ("It has been estimated that implementing validated, evidence-based risk assessment to guide pretrial release decisions could yield $78 billion in savings and benefits, nationally."); United States Court, *Supervision Costs Significantly Less than Incarceration in Federal System* (July 18, 2013), *available at* https://goo.gl/dJpDrn (In 2012, "[p]retrial detention for a defendant was nearly 10 times more expensive than the cost of supervision of a defendant by a pretrial services officer in the federal system").

## V.  CLASS ACTION ALLEGATIONS

59.     Mr. Hester proposes one class seeking declaratory and injunctive relief pursuant to Fed. R. Civ. P. 23(a) and (b)(2).  This Class is defined as: All arrestees who are or who will be jailed in Cullman County who are unable to pay the secured monetary bail amount required for their release.

60.     A class action is a superior means, and the only practicable means, by which Mr. Hester and unknown Class members can challenge Defendants' unlawful use of wealth-based detention.

61.     Class action status is appropriate because Defendants have acted, or failed and/or refused to act, on grounds that apply generally to the proposed Class, such that final injunctive and declaratory relief is appropriate with respect to each Class member as a whole.

62.     As set forth more fully below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the class counsel requirements of Rule 23(g).

***Numerosity***

63.     The precise size of the Class is unknown by Plaintiff because it is forward-looking, but it is substantial, given that hundreds of felony and misdemeanor cases are adjudicated each year in the Cullman County District Court.  Joinder of these unknown future members is impracticable.

64.     Many of the class members are low-income individuals who will likely lack financial resources to bring an independent action or to be joined in this action.  Joinder of every member of the class would be impracticable.

14

*Commonality*

65.    The relief sought is common to all members of Mr. Hester seeks relief from Defendants' money bail policies, practices, and procedures, which violate the rights of the Class members.  Mr. Hester also seeks relief mandating Defendants to change their policies, practices, and procedures so that the constitutional rights of the Class members will be protected in the future.

66.    Among the most important, but not the only, common questions of fact are:

a.    Whether the Cullman County District Court and Defendant Gentry uses a predetermined secured money bail schedule;

b.    Whether Defendant Gentry releases arrestees from jail who pay the monetary amount required by the bail schedule and detains those who cannot;

c.    Whether Defendant Gentry detains all individuals who are unable to pay the monetary amount required by the bail schedule regardless of whether inquiry into their ability to pay has been made;

d.    Whether and when Defendants Black, White, Chaney, and Turner conduct individualized release hearings and what procedural protections, if any, Defendants Black, White, Chaney and Turner provide to arrestees at those hearings; and

e.    What standard post-arrest procedures Defendants perform on misdemeanor and felony arrestees; for example, whether Defendants use any alternate procedures for promptly releasing people determined otherwise eligible for release but who are unable to afford a monetary payment.

67.    Among the most important common question of law are:

a.  Whether requiring a financial condition of pretrial release without inquiry into and findings concerning a person's ability to pay and without consideration of alternative conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection Clauses;

b.  Whether Defendants' actions in detaining arrestees solely based on their inability to pay a predetermined amount of money violate the Fourteenth Amendment's Due Process and Equal Protection Clauses;

c.  Whether Defendants' detention of poor arrestees using predetermined amounts of money without providing a sufficiently prompt release hearing violates the Fourteenth Amendment; and

d.  Whether Defendants' detention of poor arrestees without conducting an individualized release hearing with adequate procedural safeguards violates the Fourteenth Amendment.

### *Typicality*

68.  Mr. Hester's claims are typical of the claims of the other members of the Class, and he has the same interests in this case as all other Class members that he represents.  Each of them suffers injuries from the failure of Defendants to comply with the Constitution: they are each confined in jail because they could not afford to pay their secured monetary bond amount.  The answer to whether Defendants' money bail practices are unconstitutional will determine the claims of Mr. Hester and every other Class member.

69.  If Mr. Hester succeeds in the claim that Defendants' policies and practices concerning wealth-based detention violate his constitutional rights, that ruling will likewise benefit every other member of the Class.

16

*Adequacy*

70.     Mr. Hester will fairly and adequately represent the interests of the proposed Class he seeks to represent.

71.     Mr. Hester has no interests separate from or in conflict with those of the proposed Class he seeks to represent as a whole and seeks no relief other than the declaratory and injunctive relief, which is sought on behalf of the entire proposed Class he seeks to represent.

*Class Counsel*

72.     Mr. Hester is represented by attorneys from the Southern Poverty Law Center, the American Civil Liberties Union Foundation of Alabama, the American Civil Liberties Union, Civil Rights Corps, and Thomas E. Drake, II, who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendants' practices and the relevant constitutional and statutory law.  Counsel has the resources, expertise, and experience to prosecute this action.

A.     **Rule 23(b)(2)**

73.     Class action status is appropriate because Defendants have acted in the same unconstitutional manner with respect to all class members: Defendants require all arrestees to pay for their release in a range pre-determined by a bail schedule. Those who can pay are released and those who cannot pay are detained.

74.     The Class therefore seeks declaratory and injunctive relief that Defendants violate the Plaintiff's and Class members' rights under the Fourteenth Amendment by setting secured financial conditions of release without a prompt and individualized release hearing with adequate procedural protections that includes an inquiry into and findings concerning their ability to pay, or meaningful considerations of alternative conditions of release.  Because the putative Class

challenges Defendants' money bail practices as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the Class, Rule 23(b)(2) certification is appropriate and necessary.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fourteenth Amendment to the Constitution**
**(Due Process and Equal Protection)**
***Plaintiff and the Proposed Class versus Defendants Black, White, McSwain, Chaney, Turner, and Gentry***

75.     Mr. Hester incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

76.     The Fourteenth Amendment to the U.S. Constitution prohibits jailing a person solely because of her inability to make a monetary payment.

77.     Mr. Hester and the Proposed Class have a fundamental interest in their pretrial liberty under state and federal law.

78.     Requiring a person arrested for a misdemeanor or felony offense to pay a monetary bail amount pre-determined by a bail schedule is not narrowly tailored to achieve the government's interests in securing a defendant's appearance in court or public safety.

79.     There are less restrictive means to reasonably assure the government's interests.

80.     Defendants violate Plaintiff's and the Proposed Class's fundamental rights under the Fourteenth Amendment by enforcing against them a post-arrest system of wealth-based detention in which they are kept in jail because they cannot afford a monetary amount of bail pre-determined by a bail schedule without inquiry into or findings concerning ability to pay, and without consideration of and findings concerning alternative non-monetary conditions of release.

**SECOND CLAIM FOR RELIEF**
**Fourteenth Amendment to the Constitution**
**(Substantive and Procedural Due Process – Individualized Release Hearing)**
***Plaintiff and the Proposed Class versus Defendants Black, White, Chaney, Turner, and***
***Gentry***

81.     Mr. Hester incorporates by reference each and every allegation contained in the
preceding paragraphs as if fully set forth herein.

82.     The Fourteenth Amendment to the U.S. Constitution prohibits Defendants from
depriving any person of life, liberty, or property without due process of law.

83.     Plaintiff and the Proposed Class have a fundamental interest in pretrial liberty.

84.     The Fourteenth Amendment to the U.S. Constitution requires that pretrial
arrestees receive an individualized release hearing with adequate procedural safeguards to
determine the least restrictive conditions on their pretrial liberty.

85.     Defendants do not provide counsel; give arrestees an opportunity to testify or
present evidence; restrict detention to extremely serious offenses; or require a finding that no
affordable financial or non-financial condition of release will ensure appearance or public safety
before jailing pretrial arrestees on monetary bail amounts that they cannot afford.  Because
Defendants create de facto detention orders by using predetermined monetary amounts, they also
fail to apply any legal or evidentiary standards to determine whether a person should be detained
prior to trial based on some immitigable risk.

86.     Defendants violate Mr. Hester's and the Proposed Class's rights under the
Fourteenth Amendment by jailing them without providing an individualized release hearing with
the procedural protections described above.

**THIRD CLAIM FOR RELIEF**
**Fourteenth Amendment to the Constitution**
**(Due Process – Prompt Release Hearing)**
*Plaintiff and the Proposed Class versus Defendants Black, White, Chaney, Turner, and*
*Gentry*

87.     Mr. Hester incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

88.     The Fourteenth Amendment to the U.S. Constitution prohibits Defendants from depriving any person of life, liberty, or property without due process of law.

89.     Plaintiff and the Proposed Class have a fundamental interest in their pretrial liberty, which outweighs any governmental interest in pretrial detention.

90.     The Fourteenth Amendment requires a prompt release hearing following detention.

91.     Defendants violate Mr. Hester's and the Proposed Class's fundamental rights to pretrial liberty and due process by jailing them without providing a sufficiently prompt release hearing.

## VII.   Request for Relief

WHEREFORE, Plaintiff requests the following relief:

a.     That the Court assume jurisdiction over this action;

b.     Certification of a class under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Mr. Hester;

c.     A declaration that Defendants Black, White, McSwain, Chaney, and Turner violate the Plaintiff's and Class members' rights under the Fourteenth Amendment by setting secured financial conditions of release without inquiry into

or findings concerning their ability to pay, or meaningful consideration of alternative non-financial conditions of release;

d.    A declaration that Defendants Black, White, Chaney, and Turner violate Mr. Hester's and Class members' due process rights by jailing them without conducting an individualized release hearing with adequate procedural safeguards;

e.    A declaration that Defendants Black, White, Chaney, and Turner violate Mr. Hester's and Class members' due process rights by jailing them without conducting a sufficiently prompt release hearing;

f.    An order and judgment preliminarily and permanently enjoining Defendant Gentry from prospectively detaining arrestees for failing to pay the monetary amount required by the bail schedule without a prompt individualized release hearing with adequate procedural safeguards that includes an inquiry into and findings concerning their ability to pay, the suitability of alternative non-financial conditions of release, and a finding on the record that any conditions of release are the least restrictive conditions necessary to achieve public safety and court appearance;

g.    An award of prevailing party costs, including attorney fees; and

h.    Such other relief as the Court deems just and appropriate.

Dated: August 1, 2017                    Respectfully submitted,

                                        /s/ Samuel Brooke
                                        Samuel Brooke
                                        *On behalf of Attorneys for Plaintiff*

                                        Samuel Brooke (ASB-1172-L60B)
                                        Micah West (ASB-1842-J82F)[Δ]

SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL  36104
P:  (334) 956-8200
F:  (334) 956-8481
E: samuel.brooke@splcenter.org
E: micah.west@splcenter.org

Alec Karakatsanis (DC Bar No. 999294)*
Katherine Hubbard (Cal. Bar No. 302729)*
CIVIL RIGHTS CORPS
910 17th Street NW, Suite 500
Washington, DC  20006
P: (202) 930-3835
E: alec@civilrightscorps.org
E: katherine@civilrightscorps.org

Randall C. Marshall (ASB-3023-A56M)
Brock Boone (ASB-2864-L11E) [Δ]
ACLU FOUNDATION OF ALABAMA, INC.
P.O. Box 6179
Montgomery, AL  36106-0179
P: (334) 420-1741
E: rmarshall@aclualabama.org
E: bboone@aclualabama.org

Brandon Buskey (ASB-2753-A50B)*
Andrea Woods (Wash. Bar No. 48265)*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
CRIMINAL LAW REFORM PROJECT
125 Broad Street, 18th Floor
New York, NY  10004
P: (212) 549-2654
E: bbuskey@aclu.org
E: awoods@aclu.org

[Δ] *application for admission forthcoming*
*motion for admission pro hac vice forthcoming*
**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing was filed through the Court's CM/ECF

filing system, and by virtue of this filing notice will be sent electronically to all counsel of

record, including:

J. Melvin Hasting
LAW OFFICE OF MELVIN HASTING LLC
P.O. Box 517, Cullman, AL 35058
mhasting@hiwaay.net
*Counsel for Plaintiffs R.C. Schultz, D.T. Beebe, T.D. Beebe, J.H. Sterling*

Thomas E. Drake, II
THE DRAKE LAW FIRM
419 Second Avenue SW, Suite B, Cullman, AL 35055
tomdrake@bellsouth.net
*Counsel for Plaintiffs R.L. Parris, T.L. Turney, J. Stark, K. Yarbrough, R. Meeks,*
*G.M. Culwell Jr., M. Anderson, J.R. Shelton*

Brad A. Chynoweth
James W. Davis
Laura E. Howell
Steven Troy Marshall
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue, Montgomery, AL 36130
bchynoweth@ago.al.us
jimdavis@ago.state.al.us
lhowell@ago.state.al.us
smarshall@ago.state.al.us
*Counsel for Defs. State, Judge Williams, Magistrate White, Magistrate Black, Circuit*
*Clerk McSwain, Helms, Alabama Administrative Office of the Courts*

J. Dorman Walker
Wells R. Turner, III
BALCH & BINGHAM LLP
P.O. Box 78, Montgomery, AL 36101
dwalker@balch.com
*Counsel for Defs. Judge Williams, Helms, Alabama Administrative Office of the Courts*

Jamie Helen Kidd
WEBB & ELEY PC
7475 Halcyon Pointe Drive, Montgomery, AL 36124
jkidd@webbeley.com
*Counsel for Defs. Sheriff Gentry, Walker, Watson, Marchman, Cullman Cty. Comm'n*

on this March 9, 2018.

/s/ Samuel Brooke
Samuel Brooke