FILED

2018 Apr-10  PM 05:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| RAY CHARLES SCHULTZ, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>STATE OF ALABAMA, *et al.*,<br>    Defendants.<br><br>---<br><br>RANDALL PARRIS, *et al.*,<br>    Intervenor-Plaintiffs,<br><br>v.<br><br>JUDGE MARTHA WILLIAMS, *et al.*,<br>    Intervenor-Defendants.<br><br>---<br><br>BRADLEY HESTER,<br>    Intervenor-Plaintiff,<br><br>v.<br><br>MATT GENTRY, *et al.*,<br>    Intervenor-Defendants | Case No. 5:17-cv-00270-MHH<br><br>(Class Action) |

# PLAINTIFF-INTERVENOR'S REPLY MEMORANDUM
# IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff's request for a preliminary injunction presents two overlapping but distinct substantive constitutional claims: (1) the right to be free from wealth-based detention, based on equal protection and due process (claim one); and (2) the fundamental right to pretrial liberty, based on substantive due process (claim two). Both of these substantive claims trigger strict scrutiny, and under binding precedent both rights can be infringed only if the government makes a determination the deprivation is necessary to serve a compelling government interest. Both rights therefore require procedural due process safeguards to ensure the accuracy of that substantive determination. *See Washington v. Harper*, 494 U.S. 210, 220 (1990).

Plaintiff's claims are unchanged by Defendants' recent modifications to their procedures. The Court may focus on the following issues to resolve his claims. <u>On the second (substantive due process) claim</u>, the Parties are in agreement as to the facts—the Parties dispute whether the law requires Defendants to do more. Plaintiff argues that any order of pretrial detention requires a substantive finding that detention is necessary, as well as robust procedures to ensure the accuracy of that finding. This requires resolving several sub-questions discussed below, such as whether merely <u>considering</u> alternatives (which Defendants say they do) is the same as making a <u>finding</u> that no alternatives to pretrial detention exist (which they do not); what evidentiary standard applies; whether the notice and opportunity to be heard is sufficient; and whether there is a right to counsel. These are purely legal

issues, which simply require this Court to evaluate whether Defendants' new procedures are constitutionally deficient.  The injunctive relief that is warranted on this claim—setting forth the basic substantive findings and procedural safeguards needed for the State to issue an order of pretrial detention—will be unaffected by the facts adduced at the upcoming hearing.

On the first (equal protection) claim, the Court needs to determine if Defendants' wealth-based detention system that is premised on a secured bail schedule is achieving a compelling government interest, and if so, whether it is utilizing the least restrictive means to achieve that interest.  It is Defendants' burden to show that the procedures are the most effective way to achieve its compelling interests.  Plaintiff will show at the hearing that all credible studies and literature in this area lead to the conclusion that there is no evidence that secured money bail is any more effective than non-financial conditions or unsecured bail.  This factual dispute about the efficacy of secured money bail will be the key issue at the evidentiary hearing, because it will determine whether Defendants' use of a secured money bail schedule that requires up to three days of detention for the indigent is a narrowly tailored way of serving compelling interests.  All of the factual evidence leads to an unavoidable conclusion: the Court should enjoin Defendants' automatic wealth-based system prior to any individualized hearing.

## STATEMENT OF FACTS

Plaintiff Bradley Hester moved to intervene in this action on August 1, 2017, after he was arrested on a misdemeanor charge and jailed because he could not pay a $1,000 bond.  Doc. No. 76.  He alleged that Defendants' post-arrest procedures violate his rights to pretrial liberty and against wealth-based detention because he was jailed solely due to his poverty and without adequate substantive findings or procedural protections.  The Court granted intervention.  Doc. No. 94.

On March 26, 2018, two days before Defendants filed their opposition, over a year after the lawsuit was filed, and nearly eight months after Plaintiff moved to intervene, Circuit Court Judge Greg Nicholas modified the challenged bail procedures.  *See* Doc. No. 122-1.  He can change them again at any time.

The new procedures double down on wealth-based detention.  Those who can afford to pay a pre-set monetary amount are generally "entitled to release upon completion of booking and posting of a bond," subject to a carve-out for those arrested on a failure to appear warrant or identified by law enforcement as a potential unreasonable flight or public safety risk.  *Id.* at *9–11.[1]  Those who are too poor to pay secured money bail and not deemed an increased risk are jailed for up to 72 hours solely because of their poverty.  *Id.* at *11.

---

[1] Citations to the ECF pages in a docketed item are denoted by an asterisk (*).  Otherwise, citations without an asterisk refer to the original page numbers of a docketed item.

3

Arrestees who cannot afford to pay are required to complete an affidavit of substantial hardship prior to their first appearance, which Defendants say will be utilized in determining how much money bail arrestees can afford to pay. *Id.* However, the affidavit is designed for assessing appointment of counsel and waiver of filing fees; it does not notify arrestees that the form will be used to determine their ability to pay secured money bail. *Id.* at *21–22.

Defendants' policy is to consider this form and determine conditions of release at a hearing within 72 hours following arrest. *Id.* at *11–12. The procedures explicitly contemplate setting a secured bond above what the person can afford to pay, based on a "written finding." *Id.* at *13. However, the form instructions that accompany the procedures only contemplate Defendants <u>identifying</u> the factors considered in imposing wealth-based detention. *Id.* at *28. The forms do not require Defendants to make a <u>finding</u>, or explain why, based on those factors, wealth-based detention is necessary and why unsecured or non-financial alternative conditions of release are inadequate to serve the State's interests. The procedures also fail to articulate any meaningful standards that will be used and lack additional procedural protections such as counsel or a clear and convincing evidentiary standard.

## ARGUMENT

Defendants do not defend the procedures in effect when this lawsuit was filed. They instead adopted new procedures over a year after the lawsuit was filed and two

days before their response was due, and now claim the case is moot.  Defendant Gentry also argues that a writ of habeas corpus is Plaintiff's exclusive remedy.[2]

These arguments are unavailing.  The new procedures continue to authorize illegal wealth-based detention for up to 72 hours, in violation of equal protection and due process (claim one), and continue to make insufficient substantive findings or provide adequate procedural protections at the individualized hearing (claim two). And even if the new procedures were sufficient, Plaintiff's claim is not moot because of the manner in which they were adopted.

I.   **Plaintiff Is Likely to Prevail on Claim One (Equal Protection and Due Process) Because Defendants Have Not Shown That a Secured Bail Schedule Is Narrowly Tailored to Serve a Compelling Interest.**

Plaintiff argues in his first claim that he has a right to be from wealth-based detention. Doc. No. 108 at *11–17.  Defendants' primary argument is that the Constitution tolerates infringing this right for 72 hours.  Doc. No. 122 at *19–26.

The government's use of wealth-based detention is subject to strict scrutiny. *Frazier v. Jordan*, 457 F.2d 726, 728 (5th Cir. 1972) (evaluating a system "in which the difference in treatment is one defined by wealth" under strict scrutiny) (citation omitted);[3] *Buffin v. City & Cty. of San Francisco*, No. 15-CV-04959, 2018 WL

---

[2] Defendant Gentry also argues in response and in a separate motion to dismiss, Doc. No. 124, that relief against him is barred because he cannot set bail and because relief is not authorized under § 1983.  These arguments are addressed in Plaintiff's response to his motion to dismiss.

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit cases submitted prior to October 1, 1981.

424362, at *8 (N.D. Cal. Jan. 16, 2018) ("[A]n examination of the *Bearden-Tate-Williams* line of cases persuades the Court that strict scrutiny applies to plaintiffs' Due Process and Equal Protection [bail] claims.").[4]  Thus, while Plaintiff has the burden of demonstrating a likelihood of success on the merits, <u>Defendants</u> have the burden under strict scrutiny to justify why three days of *wealth-based* detention is narrowly tailored to serve a compelling interest.[5]  They have not met this burden.

*First*, Defendants argue that a <u>secured</u>[6] bail schedule is necessary because Alabama statute requires secured bail to be set within twenty-four hours following

---

[4] Heightened scrutiny can refer to either strict or intermediate scrutiny.  *Lauder, Inc. v. City of Houston, Tex.*, 751 F. Supp. 2d 920, 933 (S.D. Tex. 2010).  Both require the government to show that its policy infringing a private right is narrowly tailored to serve a compelling interest.  *Id.*  If strict scrutiny applies, the policy must be necessary to achieve that interest.  *Id.*  If intermediate scrutiny applies, then the policy is constitutional "so long as [it] promotes a substantial government interest that would be achieved less effectively absent the regulation."  *Id.*; *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052, 1138–39 (S.D. Tex. 2017), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018).  *Pugh* does not address whether strict or intermediate scrutiny applies in the context of wealth-based pretrial detention, but as the Fifth Circuit recently held, citing *Pugh*, "the distinction between post-conviction detention targeting indigents and pretrial detention targeting indigents is one without a difference."  *ODonnell*, 882 F.3d at 544 n.6.  Because *Frazier* remains binding precedent, *see Clark v. Housing Auth. of Alma*, 971 F.2d 723, 726 n.4 (11th Cir. 1992), the Fifth Circuit should also be read as having applied strict scrutiny when it found that "heightened scrutiny" applied to Harris County's wealth-based bail practices.  *ODonnell*, 882 F.3d at 544.  In any event, this Court need not resolve what scrutiny applies if it finds that the challenged practices do not survive intermediate scrutiny, or if it rules on substantive due process grounds, where strict scrutiny unquestionably applies.

[5] Defendants attempt an end-run around this burden by arguing that *some* arrestees (those arrested on a failure to appear warrant or identified as particularly high risk) may be detained until a hearing, even if they can afford to pay.  Doc. No. 122 at *18–19.  However, whether some arrestees may be detained even if they can pay does not resolve the constitutional claims of those who *are* detained *solely* because they cannot.

[6] An unsecured appearance bond "is an undertaking to pay . . . a specified sum of money upon the failure of a person released to comply with its conditions."  A secured appearance bond "is secured by deposit."  Ala. R. Crim. P. 7.1(b), (c).

arrest unless a court has adopted a "standard bail schedule," and it would be impossible for Defendants to hold an individualized hearing within that timeframe. Doc. No. 122-1 at *5–6 ¶ 12 (citing Ala. Code § 15-13-105).   Compliance with a state statute does not justify violating the federal Constitution.   *See Terrace v. Thompson*, 263 U.S. 197, 214 (1923).   Moreover, section 15-13-105 does not preclude Defendants from adopting an <u>unsecured</u> bail schedule to remedy the constitutional violations alleged here.   Indeed, the 78 largest municipal court jurisdictions in Alabama have done exactly that.[7]

Defendants also argue, without support, that a "minimum amount of bail in Rule 7.2(b)" or unsecured bail would "increase rates of failures to appear and endanger the public."   Doc. No. 122-1 at *6 ¶ 12.   However, there is no evidence that requiring more money increases appearance rates or public safety; rather, higher secured bond amounts are "associated with more pretrial detention" without ensuring better court appearance outcomes.[8]   Research also shows that "[w]hether released defendants are higher or lower risk or in-between, unsecured bonds offer the same public safety [and court appearance] benefits as do secured bonds."[9]   This

---

[7] *SPLC prompts 50 Alabama cities to reform discriminatory bail practices*, Dec. 6, 2016, *available at* https://goo.gl/9iVqRq, attached as Ex. 43 to Plaintiff-Intervenor's Notice of Evidence in Support of Motion for Preliminary Injunction ("Notice").

[8] Michael R. Jones, Pretrial Justice Institute, *Unsecured Bonds: The As Effective and Most Efficient Pretrial Release Option* 14 (Oct. 2013), https://goo.gl/UENBKJ, attached as Notice Ex. 10.

[9] Jones, *Unsecured Bonds* at 10, 11, Notice Ex. 10.  Indeed, research shows that detention for even 2–3 days actually increases the future likelihood of committing new crimes and failing to appear

makes sense, for even assuming the possibility that a monetary penalty encourages court attendance, an unsecured appearance bond would provide the same incentive as a secured appearance bond without causing constitutional infirmities.

*Second*, Defendants argue that the use of a standard bail schedule "allows for the quick release of the average defendant on a secured bond."  Doc. No. 122-1 at *6 ¶ 13.  Plaintiff does not oppose "quick release" where appropriate, but a system that makes blunt access to money the dividing line between liberty and detention does not satisfy heightened scrutiny, because there is no compelling interest in detaining someone solely because they are poor. *See Bearden v. Georgia*, 461 U.S. 660, 671 (1983) (prohibiting using poverty as proxy for dangerousness); *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (1978) ("[I]mprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible."); *Barnett v. Hopper*, 548 F.2d 550, 553 (5th Cir. 1977) (When "[t]he sole distinction is one of wealth," "the procedure is invalid."), *vacated on other grounds*, 439 U.S. 1041 (1978); *Frazier*, 457 F.2d at 728 (When "[t]hose with means avoid imprisonment [while] the indigent cannot escape imprisonment," the Fourteenth Amendment is violated.); *State v. Blake*, 642 So. 2d 959, 968 (Ala. 1994) (State has no rational basis for wealth-based detention).

---

because it can destabilize lives by negatively impacting employment, housing, and family stability. *See* Lowenkamp et al., *The Hidden Costs of Pretrial Detention* 3 (2013), attached as Notice Ex. 12.

*Third*, Defendants contend that the "use of secured bonds in the schedule increases the probability of a defendant appearing for trial by providing a financial penalty for the failure to appear and, in the case of surety bonds, by providing an incentive to bail bondsmen to make their surety appear for required court appearances." *Id.* at *6 ¶ 14. Again, it is Defendants' burden to prove their justifications to show the procedures are narrowly tailored. And again, Defendants have failed to offer any evidence to support their assertions. And, as Chief Judge Lee Rosenthal of the Southern District of Texas recently found after an eight-day preliminary injunction hearing that reviewed virtually all of the available evidence, Defendants' assertions are inconsistent with the overwhelming weight of research and experience. *See ODonnell v. Harris Cnty.*, 251 F. Supp. 3d 1052, 1132 (S.D. Tex. 2017) (finding "no meaningful difference in pretrial failures to appear or arrests on new criminal activity between misdemeanor defendants released on secured bond and on unsecured financial conditions"). "Ever since 1968, when the American Bar Association openly questioned the basic premise that money serves as a motivator for court appearance, no valid study has been conducted to refute that uncertainty."[10] Instead, as the Fifth Circuit recently affirmed, "reams of empirical data" suggest the opposite: "that release on secured financial conditions does not assure better rates of

---

[10] Timothy R. Schnacke, Dep't of Just., Nat'l. Inst. of Corrs., *Fundamentals of Bail* 12 (Sept. 2014), https://goo.gl/jr7sMg, attached as Notice Ex. 27.

appearance or of law-abiding conduct before trial compared to release on unsecured bonds or nonfinancial conditions of supervision." *ODonnell v. Harris Cnty.*, 882 F.3d 528,537 (5th Cir. 2018).

*Fourth*, Defendants argue that *Pugh* held that a bail schedule is permissible if followed by an individualized hearing at the first appearance for any who cannot pay. Doc. No. 122 at *15. Defendants are mistaken. *Pugh* only held that Florida Rule of Criminal Procedure 3.130(b) is *facially* constitutional; nothing in the four corners of the Rule authorized a bail schedule, let alone a secured one that offered no mechanism of release for the poor. *See Pugh*, 572 F.2d at 1055 n.2. More importantly, *Pugh* found that there must be a "meaningful consideration" of alternatives to secured money bail <u>prior to</u> wealth-based detention, *id.* at 1057, which Defendants themselves concede, *see* Doc. No. 122 at *17–18 (*Pugh*'s "analysis focused on the procedures that must be given an indigent defendant <u>before</u> requiring a secured form of release.") (emphasis added).

*Fifth*, Defendants argue that *Blake*, 642 So. 2d 959 (Ala. 1994), "endors[es]" a maximum 72-hour period of wealth-based detention. Doc. No. 122 at *20. This argument is misplaced. *Blake* involved a facial challenge to a statute that required 72 hours of detention before release on recognizance was permitted; it did not involve a challenge to the Alabama Rules of Criminal Procedure. *Id.* at 961. And though *Blake* erred in applying rational basis review, <u>it still found that 72 hours of</u>

wealth-based detention does not survive this deferential standard. *Id.* at 968. Defendants' argument that a *minimum* 72-hour period of wealth-based detention is unconstitutional but that a *maximum* 72-hour period is valid is belied by the logic of *Blake* itself, which noted that the problem with the "72-hour delay" was that it had no rational connection with "the State's interest in public safety." *Id.* The same is true here. Defendants' efforts to screen out and mandatorily detain some who are dangerous—*see* Doc. No. 122 at *19—does not change the fact that the poor will remain locked up simply because of their poverty.

*Sixth*, Defendants cite *Edwards v. Cofield*, No. 3:18-CV-321, 2018 WL 1413384 (M.D. Ala. Mar. 21, 2018), for the proposition that a 72-hour period of wealth-based detention is permissible. Doc. No. 122 at *20–21. But the *Edwards* court reached this conclusion by focusing on *due process*, not equal protection. *Edwards*, 2018 WL 1413384, at *11 (discussing *Salerno*, which is based on substantive due process).[11] Here, Plaintiff's claim is not about how quickly a bail hearing must be held under the due process clause in a system—like the federal system—that does not engage in wealth-based discrimination.[12] Instead, Plaintiff alleges that it violates equal protection to detain those who cannot pay, and to release

---

[11] More generally, the *Edwards* court failed to engage in *any* narrow tailoring analysis. This was error. Ms. Edwards has filed a motion to reconsider, and the court has ordered briefing.

[12] Plaintiff raises this claim in his Complaint as his third claim for relief, but Plaintiff did not seek a preliminary injunction on this claim.

those who can.  *Compare ODonnell*, 882 F.3d at 545 (bail schedule that detains poor and releases wealthy "violates the equal protection clause") *with Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991) (Due process requires jurisdiction that combines probable cause and bail hearing to do so "as soon as is reasonably feasible, but in no event later than 48 hours after arrest.").  Because Defendants have created a system that detains the poor because of their poverty, Defendants have a heightened burden to demonstrate why their wealth-based system is necessary to serve a compelling interest.  They have not met that burden.

*Finally*, Defendants argue that their system is permissible because "bail . . . is basic to our system of law."  Doc. No. 122 at *14 (quoting *Schilb v. Kuebel*, 404 U.S. 357, 484 (1971)).  Defendants conflate the term "bail"—the financial *and non-financial* conditions of release before trial—with *secured* money bail.  Moreover, historically, secured money bail was never used as a detention mechanism, but instead as a release mechanism: "from the medieval period until the early American republic, a bail bond was typically based on an individualized assessment of what the arrestee or his surety could pay to assure appearance and secure release." *ODonnell*, 251 F. Supp. 3d at 1069; *see also* Brief for Amicus Curiae CATO Institute, *ODonnell v. Harris County*, No. 17-20333, at 11 (5th Cir. 2017) ("[T]hat bail cannot be required of indigent defendants beyond what they could reasonably

acquire, was broadly accepted for over 100 years").[13]  Defendants have offered no evidence that our system of justice always intended to use purely *financial* conditions of release to detain the poor.

## II. Plaintiff Is Likely to Prevail on His Second Claim (Substantive and Procedural Due Process) Because Defendants' Substantive Findings Are Insufficient and the New Procedures Provide Insufficient Procedural Protections to Limit Erroneous Deprivations of Liberty.

### A. The New Procedures Violate Substantive Due Process Because They Fail to Make A Constitutionally Sufficient Finding that Pretrial Detention Is Necessary.

Plaintiff argues in his second claim that Defendants violate substantive and procedural due process.  Doc. No. 108 at *17–26.  Because the "interest in liberty" is "fundamental," it is a "'general rule' of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial." *United States v. Salerno*, 481 U.S. 739, 750 (1987).  As noted in Plaintiff's opening brief, an order setting unobtainable financial conditions of release is the functional equivalent of a detention order.  *See* Doc. No. 108 at *21–22.

Like other fundamental constitutional rights, the right to pretrial liberty is not absolute: Defendants may deprive a person of her right to pretrial liberty if they satisfy strict scrutiny.  *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780–81 (9th Cir. 2014) (collecting cases noting that *Salerno* "involved a fundamental liberty

---

[13] *Available at* https://goo.gl/fe6e5o.

interest and applied heightened scrutiny"); *see also Buffin*, , 2018 WL 424362, at *6 (finding "use of the Bail Schedule implicates plaintiffs' fundamental right to liberty, and any infringement on such right requires a strict scrutiny analysis"); *Reem v. Hennessy*, No. 17-cv-6628-CRB, 2017 WL 6765247, at *1 (N.D. Cal. Nov. 29, 2017) ("The due process clauses of the Fifth and Fourteenth Amendments bar pretrial detention unless detention is necessary to serve a compelling government interest."); *In re Humphrey*, 228 Cal. Rptr. 3d 513, 535 (Cal. Ct. App. 2018) (holding that arrestee may be detained pretrial only if based on a finding "that no less restrictive alternative will satisfy" the government's interest in court appearance). Thus in order to avoid violating substantive due process, Defendants must make a finding that pretrial detention is narrowly tailored to serve a compelling interest.

The new procedures do not require any finding that pretrial detention is necessary.  The modified Order on Initial Appearance requires Defendants to find only that they <u>considered</u> the least onerous conditions of release, but not that those conditions were <u>imposed</u>.  Doc. No. 122-1 at *27.  If secured money bail is required as a condition of release, the Release Order requires Defendants to check a box identifying that the arrestee presents a flight "and/or" public safety risk.  *Id.* at 30.  But if the bail set is unaffordable, it ceases operating as a condition of release and transforms into a *de facto* order of detention.  Yet the forms do not require a finding that detention is necessary based on that risk.  Indeed, the forms do not reference

pretrial detention at all.  Because substantive due process requires a finding that there is no available less restrictive alternative—not merely that judges consider alternatives—the modified procedures do not cure the most basic constitutional violation alleged in this case.

Thus, regardless of the facts adduced at the evidentiary hearing, preliminary injunctive relief is warranted to ensure that any use of pretrial detention occurs only after a substantive finding that pretrial incapacitation is necessary.

### B. The New Procedures Violate Procedural Due Process Because They Are Inadequate to Ensure the Accuracy of Any Substantive Finding That Pretrial Detention Is Necessary.

Defendants also violate procedural due process because they provide inadequate procedural protections at the 72-hour hearing to ensure the accuracy of any substantive findings that are made.  The substantive right to pretrial liberty "cannot be deprived except pursuant to constitutionally adequate procedures" that ensure the accuracy of any substantive finding that pretrial detention is necessary. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

Defendants argue that *Salerno* did not find that the procedural protections required by the Bail Reform Act are constitutionally required.  Doc. No. 122 at *27– 31.  While true, that does not end the inquiry.  Evaluating the adequacy of procedural protections requires a court to weigh (1) "the private interest" affected, (2) the "risk of an erroneous deprivation" without additional procedural protections, and (3) the

"fiscal and administrative burdens" that additional protections would require. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Defendants do not dispute that due process requires notice, an opportunity to be heard, and express findings prior to wealth-based detention: they argue instead that the new procedures "already provide[] the relief requested." Doc. No. 122 at *27.  Defendants are mistaken.

*First*, Defendants do not provide "clear notice" to arrestees about the purpose of the initial appearance or that the arrestee's ability to pay is a "critical question" at the hearing. *Turner v. Rogers*, 564 U.S. 431, 449 (2011).  "[N]otice is essential to afford [an arrestee] an opportunity to challenge the contemplated action and to understand the nature of what is happening to him." *Vitek v. Jones*, 445 U.S. 480 (1980).  Arrestees are required to complete an affidavit of substantial hardship and release questionnaire prior to the hearing, but the affidavit is misleading.  The affidavit states that it is for appointment of counsel (and waiving civil filing fees); it makes no mention of bail.  Doc. No. 122-1 at 21–22.  The forms do not notify arrestees that any financial information disclosed will be used to determine the amount of secured money bail the arrestee can afford, let alone the fourteen factors that Defendants purport they consider in setting release conditions.  This does not constitute reasonable notice.  *See Mathews*, 424 U.S. at 349 (procedures, including notice, must be tailored, "in light of the decision to be made, to the 'capacities and circumstances of those who are to be heard,' to insure that they are given a

16

meaningful opportunity to present their case") (internal citations omitted).

*Second*, Defendants do not provide arrestees with a full opportunity to speak and present evidence. "The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his" liberty or another fundamental right. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). "When a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of [liberty] interests can be prevented." *Id.* at 81; *see also Jenkins v. McKeithen*, 395 U.S. 411, 429 (1969) ("The right to present evidence is, of course, essential to the fair hearing required by the Due Process Clause."). While the new procedures *permit* the court to "elicit testimony about the defendant's financial condition," there is no guarantee of this opportunity. *See* Doc. No. 122-1 at *13. Moreover, the purpose of the hearing is broader than merely determining an arrestee's financial status: it will determine whether a person will remain detained, regardless of financial condition. However, the procedures do not afford the opportunity to speak and present evidence about why detention is unnecessary or about other alternatives to incarceration.

*Third*, Defendants do not provide express findings about why wealth-based detention is necessary because no other alternative conditions are available. "Due process generally requires the decision-maker to state the reasons for his

determination and indicate the evidence upon which he relied." *McCall v. Montgomery Hous. Auth.*, 809 F. Supp. 2d 1314, 1324 (M.D. Ala. 2011); *see also Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). "[A] decision without basis in fact would tend to indicate that the procedures, no matter how scrupulously followed, had been a mockery of their intended purpose—rational decisionmaking." *Holley v. Seminole Cty. Sch. Dist.*, 755 F.2d 1492, 1499 (11th Cir. 1985). Here, the procedures simply require Defendants to check one or more boxes identifying what factors were considered in requiring secured money bail; they do not require an explanation for why these factors led to the conclusion that secured money bail, as opposed to another condition or combination of conditions, is the narrowly tailored way of serving a particularly identified government interest. Doc. No. 122-1 at *28; *see also* Doc. No. 122 at *29–30. This "checked box" process is facially insufficient, because the order "does not explain how the judge calculated the bail amount, how [the arrestee's] criminal history demonstrated that he posed a serious flight risk [or risk to the community], or why that risk was so great that it necessitated a bail amount beyond his means." *Brangan v. Commonwealth*, 80 N.E.3d 949, 966 (Mass. 2017); *see also In re Humphrey*, 228 Cal. Rptr. 3d at 536 (explicit findings "guard against careless decision making," "preserve public confidence in the fairness of the judicial process," and provide a review mechanism). Moreover, without a reasoned finding, arrestees cannot effectively file a motion for bond reduction following the

initial appearance because they are left guessing why they were detained.

*Fourth*, no evidentiary standard guides Defendants' decision-making, let alone the "intermediate standard of proof" that the Supreme Court has found necessary when the interests at stake "are both 'particularly important' and 'more substantial than mere loss of money.'"   *Santosky v. Kramer*, 455 U.S. 745, 756 (1982).   "Notice, summons, right to counsel, rules of evidence, and evidentiary hearings are all procedures to place information *before* the factfinder.   But only the standard of proof 'instruct[s] the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions' he draws from that information."   *Id.* at 756 n.9 (emphasis original) (citation omitted); *see also Addington v. Texas*, 441 U.S. 418, 425 (1979) (noting standard connotes "value society places on individual liberty").   "Increasing the burden of proof is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances" of erroneous deprivation.   *Addington*, 441 U.S. at 427.

Here, a clear and convincing standard "would reduce factual error without imposing substantial fiscal burden upon the State," *Santoksy*, 455 U.S. at 767, while also limiting the harm that attends even two or three days of pretrial detention.   It would also advance the State's own interests in accurate and fair decisionmaking, as the State has an interest in pretrial detention only when necessary to ensure public safety or court attendance.   *See Kleinbart v. United States*, 604 A.2d 861, 872 (D.C.

1992) (due process requires clear and convincing evidence prior to detention); *see also* Doc. No. 108 at 22–23 (citing cases requiring clear and convincing evidence).

*Fifth*, counsel is not provided to Defendants at the 72-hour hearing. Defendants argue that Plaintiff must plead any right to counsel claim under the Sixth—rather than the Fourteenth—Amendment. Doc. No. 122 at *30. However, the Supreme Court has repeatedly held that the Sixth Amendment is "part of the 'due process of law' that is guaranteed by the Fourteenth Amendment . . . ." *Faretta v. California*, 422 U.S. 806, 818 (1975); *see also Maine v. Moulton*, 474 U.S. 159, 168–69 (1985) ("The right to the assistance of counsel guaranteed by the Sixth *and Fourteenth Amendments* is indispensable to the fair administration of our adversarial system of criminal justice.") (emphasis added); *Scott v. Illinois*, 440 U.S. 367, 373–74 (1979) (recognizing right to counsel under the Fourteenth Amendment). Thus, whether pled as a Sixth Amendment claim, focused on a critical stage analysis, or a Fourteenth Amendment claim, focused on fundamental fairness, the outcome should be the same.[14] "Simply stated, the Court's critical stage analysis is 'designed to protect the fairness of the trial itself,'" that is, due process. *United States v. Hidalgo*, 7 F.3d 1566, 1569 (11th Cir. 1993) ((citation omitted); *see also Johnson v. United States*, 344 F.2d 401, 411 (5th Cir. 1965) ("The most minimal requirement of

---

[14] Even if this Court determines that Plaintiff should have pleaded his claim under the Sixth Amendment, it should grant his requested relief pending an amendment to his pleadings.

procedural due process is that an accused at a critical stage of a criminal proceeding must be assured the right to counsel.").

The term 'critical stage' "denote[s] a step of a criminal proceeding . . . that [holds] significant consequence[] for the accused." *Bell v. Cone*, 535 U.S. 685, 695–96 (2002). Counsel is required if there is "potential substantial prejudice to defendant's rights" and counsel could "help avoid that prejudice." *Coleman v. Alabama*, 399 U.S. 1, 7 (1970). Thus, a court must examine the proceeding "to determine whether the accused require[s] aid in coping with legal problems or assistance in meeting his adversary." *United States v. Ash*, 413 U.S. 300, 313 (1973). For example, in *Coleman*, the Supreme Court held that Alabama's preliminary hearing is a critical stage, in part, because counsel could help a defendant "mak[e] effective arguments . . . on such matters as the necessity for . . . bail." 399 U.S. at 9.

The Eleventh Circuit has not determined whether Alabama's first appearance is a critical stage. However, several other circuits have found that a bail hearing is a critical stage. *See, e.g.*, *Higazy v. Templeton*, 505 F.3d 161, 172–73 (2d Cir. 2007); *Smith v. Lockhart*, 923 F.2d 1314, 1319 (8th Cir. 1991); *see also United States v. Johnson*, 516 F. Supp. 696, 699 (E.D. Pa. 1981); *Hurrell-Harring v. State*, 930 N.E.2d 217, 223 (N.Y. 2010); *Gonzalez v. Comm'r of Correction*, 68 A.3d 624, 637 (Conn. 2013) (finding that a preliminary arraignment, at which pretrial release could be considered, was a critical stage, reasoning that "there is nothing more critical than

the denial of liberty, even if the liberty interest is one day in jail"). There is good reason why. Without the guiding hand of counsel, an arrestee has no reliable way to ensure that a court has all relevant facts necessary to make a release determination, or to avoid incriminating himself as he struggles to advocate for release. *See* Doc. No. 108 at *25–26 (collecting citations). Indeed, "legal representation at bail [hearings] often makes the difference between an accused regaining freedom and remaining in jail prior to trial," while delaying an appointment is the most powerful cause of lengthy pretrial detention. *Id.* at *26 (citation omitted). Moreover, the difference between freedom and pretrial detention for even a few days is often outcome determinative. *See ODonnell*, 882 F.3d at 537 ("[T]he expected outcomes for an arrestee who cannot afford to post bond are significantly worse than for those arrestees who can. . . . [I]ndigent arrestees who remain incarcerated because they cannot make bail are significantly more likely to plead guilty and to be sentenced to imprisonment . . . [and] pretrial detention can lead to loss of [a] job, family stress, and even an increase in likeliness to commit crime.").

### III.  The Public Is Served by an Injunction That Ends Unconstitutional Practices.

Defendants argue that an injunction would disserve the public interest because it would force them to detain all arrestees for 72 hours. Doc. No. 122 at *31–32. But Plaintiff does not request that everyone be detained, only that Defendants may not determine who is freed and who is jailed on the sole basis of wealth. Ending

wealth-based discrimination "surely serves the public interest." *Cento Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 191 (4th Cir. 2013).

There are alternative options available to avoid the constitutional violations presented by a wealth-based detention scheme while also promoting "speedy and convenient release." *Pugh*, 572 F.2d at 1057. For example, Defendants could release everyone on unsecured bond or their own recognizance, limiting detention prior to the initial appearance to those arrestees identified by law enforcement officers as a potential "unreasonable risk of flight or danger to the community," *see* Doc. No. 122-1 at *9–10. This alternative would remedy the constitutional violations at issue while also complying with state law requiring pretrial release on "personal recognizance or on an appearance bond" unless a determination is made that the person will not appear as required or poses "a real and present danger to others or to the public at large." Ala. R. Crim. P. 7.2. Or, Defendants could take different approaches for different offenses, such as automatic non-financial release for most offenses but requiring that those charged with violent felony offenses appear for an individualized release and detention hearing. Other options may also exist. The critical point is that the decision to jail a person for up to three days would not be based solely on that person's access to a preset amount of cash.

Steps taken by other courts across the country further demonstrate that Defendants' dependence on secured money bail—and jailing the poor—does not

enhance public safety or appearance.[15]   For example, Washington, D.C., releases

more than 94% of all arrestees without financial conditions of release and no one is

detained on secured money bail that they cannot afford without any impact on

appearance or public safety.[16]   Similarly, the federal judiciary eschews wealth-based

detention, requiring any detention order to be based on a finding of dangerousness

or flight risk, and the practice has not harmed court appearance rates or public

safety.[17]   And the State of New Jersey has also transformed its "antiquated money

bail system that discriminated against the poor" into a system that effectively

eliminated secured money bail, while also effectuating high release rates on non-

financial conditions; low detention rates; and, in 2017, the revocation of less than

1% of defendants released pretrial.[18]   These are but a few of the many local

---

[15] *See* Doc. No. 108 at 14 n.18.

[16] *See* D.C. Code § 23-1321; *see also* Pretrial Services Agency for the District of Columbia, *Release Rates for Pretrial Defendants within Washington, DC*, https://goo.gl/VSDeDk ("In Washington, DC, we consistently find over 90% of defendants are released pretrial without using a financial bond"), attached as Notice Ex. 44; *see also* Pretrial Just. Inst., *The D.C. Pretrial Services Agency: Lessons from Five Decades of Innovation and Growth* 2 (2009), https://goo.gl/6wgPM8 ("The high non-financial release rate has been accomplished without sacrificing the safety of the public or the appearance of defendants in court.  Agency data shows that 88% of released defendants make all court appearances, and 88% complete the pretrial release period without any new arrests."), attached as Notice Ex. 32.

[17] *See* 18 U.S.C. § 3142(c)(2) ("The judicial officer may not impose a financial condition that results in the pretrial detention of the person."); *see also* Thomas H. Cohen, *Pretrial Release and Misconduct in Federal District Courts, 2008-2010*, Bureau of Justice Statistics Special Report 13 (Nov. 2012), https://www.bjs.gov/content/pub/pdf/prmfdc0810.pdf (finding from 2008 to 2010, only 1% of federal defendants released pretrial failed to make court appearances and 4% were arrested for new offenses), attached as Notice Ex. 33.

[18] Judge Glenn A. Grant, *Criminal Justice Reform Report to the Governor and the Legislature for Calendar Year 2017* 4, 7, 15, 17 (Feb. 2018) https://goo.gl/1xjbj7, attached as Notice Ex. 8A.

jurisdictions whose data and experience demonstrate that secured money bail is no more effective than non-financial alternatives.

## IV.   An Injunction Is an Appropriate Remedy.

Defendant Gentry raises two additional arguments challenging an injunction being entered against him in his capacity as Sheriff.  He argues first that such an order would violate the separation of powers, Doc. No. 125 at *3–9, which Plaintiff addresses in his contemporaneously-filed response to Gentry's motion to dismiss, Doc. No. 123.  Second, he argues that Plaintiff seeks "release from confinement for certain inmates," and that this must be brought as a habeas.  Doc. No. 125 at *9 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).  This argument is erroneous.

Under *Preiser*, a "state prisoner's § 1983 action is barred . . . *if* success in that action would *necessarily* demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (second emphasis added).  If a claim would not "'necessarily spell speedier release,'" it is cognizable under § 1983. *Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (quoting *Dotson*, 544 U.S. at 82).  Moreover, a mere "belie[f] that victory . . . will lead to speedier release from prison" does not bar a § 1983 claim.  *Dotson*, 544 U.S. at 78.

Plaintiff seeks nothing that requires any arrestee's release, *i.e.*, nothing that *necessarily* "demonstrate[s] the invalidity of [any arrestee's] confinement or its

duration." *Id.* at 82.[19]  Rather, he challenges the automatic, wealth-based practices that Defendants use to determine who is jailed and who is released after arrest, and he seeks an injunction requiring constitutionally adequate processes to determine post-arrest release or detention.  These are not habeas claims.  *Cf. id.* at 81 ("[T]he prisoner's claim for an injunction barring *future* unconstitutional procedures did *not* fall within habeas' exclusive domain." (emphases original)).

Case law confirms *Preiser*'s inapplicability here.  In *Gerstein v. Pugh*, for example, pretrial detainees sought "a judicial hearing on the issue of probable cause," claiming that detention without a probable cause determination violated the Fourth Amendment.  420 U.S. 103, 107 (1975).  Texas argued that the claim belonged in a habeas proceeding because no "purpose could be served by a determination of probable cause" other than to release improperly held detainees.  Texas Amicus Br., *Gerstein v. Pugh*, 1974 WL 186448, at *9 (U.S. Aug. 19, 1974).  The Court disagreed, finding that the injunction would not *necessarily* produce that result, and concluding that by seeking a *process* to examine the validity of detention, "the lawsuit did not come within the class of cases for which habeas corpus is the exclusive remedy."  *Gerstein*, 420 U.S. at 107 n.6.  Likewise here, the relief sought

---

[19] Defendants recognize this, because they argue the injunction would *require detention* for up to 72 hours.  *See* Doc. No. 122 at *32 (arguing that Plaintiff's requested relief "would require *everyone* arrested in Cullman County to remain in jail until they received an initial appearance"); Doc. No. 125 at *2 (adopting and incorporating Judicial Defendants' arguments).

"relates to" but does not provide "'core' habeas corpus relief." *Dotson*, 544 U.S. at

81. *Preiser* does not apply. *See, e.g.*, *Walker v. City of Calhoun*, No. 4:15-CV-0170,

2016 WL 361612, at *13 (N.D. Ga. Jan. 28, 2016) , *vacated on other grounds*, 2017

WL 929750 (11th Cir. Mar. 3, 2017) (distinguishing *Preiser* in similar challenge).

## V.    The New Procedures Do Not Moot This Case.

As explained above, this case is not moot because the new procedures do not

redress Defendants' constitutional violations. *See supra* Parts I-II.  But assuming

*arguendo* that the new procedures did cure Plaintiff's injury, this late-in-the-game

attempt to moot the claims still fails under the voluntary cessation doctrine.

Defendants have not met their "formidable burden of showing that it is absolutely

clear that the allegedly wrongful behavior could not reasonably be expected to

recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167,

190 (2000); *see also Edwards*, 2018 WL 1413384, at *3-6 (finding similar changes

did not moot similar legal challenge).

The Eleventh Circuit articulated three factors to consider in *Flanigan's*

*Enterprises, Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248 (11th Cir. 2017).

The first factor under the *Flanigan's Enterprises* test, "whether the change in

conduct resulted from substantial deliberation or is merely an attempt to manipulate

[a federal court's] jurisdiction," weights strongly against a finding of

mootness. *Id.* at 1257.  The Eleventh Circuit has also phrased this inquiry as asking

whether a mid-litigation change was "an attempt to avoid the issuance of an injunction." *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1312 (11th Cir. 2011).   Under this factor, the court "will examine the timing" of the new standing bond order, "the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it." *Flanigan's Enters.*, 868 F.3d at 1257.

It is apparent from Defendants' filings that these procedures were adopted to obviate the need for a preliminary injunction.   *See* Doc. No. 122 at *32 ("The Standing Order adopts pre-trial appearance and bail procedures that end the practices Hester challenges.").   The timing and method of enacting the new procedure support this conclusion.   It was issued two days before Defendants responded to the pending motion, and was enacted through the unilateral issuance of a new standing bond order by Judge Nicholas, an order that could be revoked or changed at any time. Defendants offer no explanation for why this factor weighs in their favor beyond the conclusory statement that "there is no reason to believe that the Standing Order is an attempt to manipulate the Court into dismissing the lawsuit."   *Id.* at *35.   Because there is no explanation independent from the ongoing litigation that may have motivated the new standing order, this factor weighs in Plaintiff's favor.

The second *Flanigan's Enterprises* factor, "whether the government's decision to terminate the challenged conduct was unambiguous," also weighs in

Plaintiff's favor.  868 F.3d at 1257.  This factor requires the court to "consider whether the actions that have been taken to allegedly moot the case reflect a rejection of the challenged conduct that is both permanent and complete."  *Id.*  The "timing and content" of the decision to modify the policy are relevant in assessing whether the defendant's "termination" of the challenged conduct is "unambiguous."  *Id.* at 1266–67.  A defendant's cessation before receiving notice of a legal challenge weighs in favor of mootness, *see  Troiano v. Supervisor of Elections in Palm Beach Cty.*, 382 F.3d 1276, 1285 (11th Cir. 2004), while cessation that occurs "late in the game" will make a court "more skeptical of voluntary changes that have been made . . . ."  *Burns v. Pa. Dep't of Correction*, 544 F.3d 279, 284 (3d Cir. 2008).

Here, the timing of Defendants' new policy—announced over a year after the case was filed and two days before filing their opposition to the motion for preliminary injunction—calls into question the motivation behind the policy change. *See Rich v. Sec'y. Fla. Dep't of Corrections*, 716 F.3d 525, 532 (11th Cir. 2013) ("[T]he timing of Florida's policy change creates ambiguity.  The policy change was not made before litigation was threatened, but was instead 'late in the game.'"); *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1312 (finding not moot where change announced at preliminary injunction hearing).  The timing strongly suggests that the policy change was made for purposes of this litigation.

Moreover, the standing order of a single judicial official has no guarantee of

permanence, but the case is moot only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1131 (11th Cir. 2005) (quoting *Laidlaw*, 528 U.S. at 189); *see also Harrell v. The Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) (same); *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005) ("[V]oluntary cessation . . . will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction."). The current policy can be unilaterally changed or withdrawn at a moment's notice. The standing order's inherent impermanence makes this case easily distinguishable from cases where a legislative body formally enacts or repeals a law. *See, e.g.*, *Flanigan's Enterprises*, 868 F.3d at 1262 (holding claims moot where City Council voted to repeal the portion of its ordinance that was challenged in the case). The standing order leaves Defendants free to return to their former procedures without the requirement of any legislative or public deliberative process. *See Harrell*, 608 F.3d at 1267 (finding fact that Board acted in secrecy, meeting behind closed doors, relevant to question of whether policy change would endure).

Defendants offer no argument that the new procedures are permanent, except to say so in their brief and to say that the new procedures replace the old. *See* Doc. 122 at *37. This is not enough. "A defendant's assertion that it has no intention of reinstating the challenged practice 'does not suffice to make a case moot' . . . ."

*Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007).

The third *Flanigan's Enterprise* factor—whether the government has consistently maintained its commitment to the new policy—does not support mootness given that the procedures were adopted so recently.

Defendants' minimal attempt at a policy change does little to address their ongoing constitutional violations and does not demonstrate the irrevocable change of heart required to moot a case.  Therefore, this case is not moot.


Dated this April 9, 2018.          Respectfully submitted,

/s/ Micah West
Micah West
*On behalf of Attorneys for Plaintiff*

Samuel Brooke (ASB-1172-L60B)
Micah West (ASB-1842-J82F)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL  36104
P:  (334) 956-8200
F:  (334) 956-8481
E: samuel.brooke@splcenter.org
E: micah.west@splcenter.org

Alec Karakatsanis (DC Bar No. 999294)*
Katherine Hubbard (Cal. Bar No. 302729)*
CIVIL RIGHTS CORPS
910 17th Street NW, Suite 500
Washington, DC  20006
P: (202) 930-3835
E: alec@civilrightscorps.org
E: katherine@civilrightscorps.org

Randall C. Marshall (ASB-3023-A56M)
Brock Boone (ASB-2864-L11E)
ACLU FOUNDATION OF ALABAMA, INC.
P.O. Box 6179
Montgomery, AL  36106-0179
P: (334) 420-1741
E: rmarshall@aclualabama.org
E: bboone@aclualabama.org

Brandon Buskey (ASB-2753-A50B)*
Andrea Woods (Wash. Bar No. 48265)*
AMERICAN     CIVIL     LIBERTIES     UNION
FOUNDATION
CRIMINAL LAW REFORM PROJECT
125 Broad Street, 18th Floor
New York, NY  10004
P: (212) 549-2654
E: bbuskey@aclu.org
E: awoods@aclu.org

* *admitted pro hac vice*
**Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date the foregoing was filed through the Court's

CM/ECF filing system, and by virtue of this filing notice will be sent electronically

to all counsel of record, including:

Steven Troy Marshall
James W. Davis
Laura E. Howell
Brad A. Chynoweth
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue, Montgomery, AL 36130
smarshall@ago.state.al.us; jimdavis@ago.state.al.us; lhowell@ago.state.al.us;
bchynoweth@ago.state.al.us
*Counsel for Defs. Judge Turner, Magistrate White, Magistrate Black, Circuit Clerk McSwain*

J. Dorman Walker
John W. Naramore
BALCH & BINGHAM LLP
P.O. Box 78, Montgomery, AL 36101
dwalker@balch.com; jnaramore@balch.com
*Counsel for Defs. Judge Chaney, Judge Turner, Magistrate White, Magistrate Black, Circuit Clerk McSwain*

J. Randall McNeill
Jamie Helen Kidd
WEBB & ELEY PC
7475 Halcyon Pointe Drive, Montgomery, AL 36124
rmcneill@webbeley.com; jkidd@webbeley.com
*Counsel for Def. Gentry*

on this April 10, 2018.

/s/ Micah West
Micah West