FILED

2019 Mar-15  PM 12:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| RAY CHARLES SCHULTZ, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>STATE OF ALABAMA, *et al*.,<br>    Defendants. | Case No. 5:17-cv-00270-MHH<br><br>(Class Action) |
| BRADLEY HESTER,<br>Intervenor-Plaintiff,<br><br>v.<br><br>MATT GENTRY, *et al.*,<br>Intervenor-Defendants. | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION TO COMPEL
## DEPOSITION TESTIMONY FROM JUDICIAL DEPONENTS[i]

---

[i] This memorandum is identical to the proposed overlength memorandum submitted to this Court, Doc. 215-1, except that Plaintiff has added docket citations to Appendices A–H that were attached to the Motion to Compel, Doc. 214.

Plaintiff Bradley Hester respectfully requests that this Court enter an order directing Defendants Magistrate Joan White, Magistrate Amy Black, Circuit Court Clerk Lisa McSwain, District Court Judge Wells R. Turner, and District Court Judge Kim Chaney (collectively "Judicial Defendants"), as well as non-party Circuit Court Judge Greg Nicholas (collectively "Judicial Deponents"), to answer questions posed by Plaintiff's counsel, as detailed below, that either are not protected by judicial privilege or legislative privilege, or are exceptions to these privileges based on the applicable balancing tests.

Plaintiff took the depositions of Magistrate White and Judge Turner on February 26–27, 2019, to create a record of questions and objections for this Court to consider in issuing an order applicable to *all* depositions of Judicial Deponents in this case.  During these two "test" depositions, Judicial Deponents' counsel objected 139 times on the bases of judicial privilege and/or legislative privilege.  These objections are not supported by the law, and this Court should order Judicial Deponents to answer these questions and similar questions in future depositions.

First, most of the objections on the basis of judicial privilege[2] were improper; as discussed in more detail below, the privilege does not apply to fact questions or

---

[2] Judicial Deponents invoked "judicial privilege" in the depositions.  In previous filings with this Court, Plaintiff has described this same privilege as either a "judicial deliberative process privilege" or a "qualified privilege."  *See* Doc. 208.  Other courts have referred to this privilege as the "mental processes privilege."  *See, e.g.*, *United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D.

questions about general practices or procedures.  Moreover, even if the privilege does encompass these questions, Judicial Deponents have waived any such objections through extensive prior testimony and written discovery responses about the same subject matter.

For the comparatively few questions about Judicial Deponents' mental impressions regarding individual adjudications—to which a judicial privilege may apply—Plaintiff is entitled to responses: the privilege is qualified, and Plaintiff has demonstrated that he is entitled to answers under the relevant balancing test.

Second, counsel invoked the legislative privilege to questions regarding the Standing Order and prior bail schedules in use in Cullman County, *see* Doc. 122-1, for the first time in Judge Turner's deposition.  Because the creation of bail schedules and the Standing Order were not "legislative acts," the privilege does not apply.  However, even if it did, Plaintiff is entitled to responses under the relevant balancing test described below.  Furthermore, Judicial Defendants have waived any such objections through extensive prior testimony and written discovery responses about the same subject matter.

---

523, 525–26 (N.D. Ind. 2005); *see also Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660, 2016 WL 813709, at *1 n.2 (S.D. Ill. Mar. 2, 2016) ("The Court notes that there are several overlapping privileges potentially applicable to the information at issue here, including the 'deliberative process privilege,' the 'mental process privilege,' and the 'judicial deliberation privilege.'").  For ease of reference, Plaintiff adopts the label of "judicial privilege" in this motion.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2017, Plaintiff-Intervenor Bradley Hester intervened in this action and filed a motion for preliminary injunction seeking to enjoin systemic violations of arrestees' constitutional rights.   Two days before they filed their opposition brief, Judicial Defendants modified their practices and filed a declaration from Defendant Judge Turner and a Standing Order from non-party deponent Judge Nicholas.   The declaration and Standing Order described the modified practices and offered several justifications for Cullman County's reliance on a secured money bail schedule.   Doc. 122-1 at 5–6 ¶¶ 12, 14; *id.* at 8–9.

The Court then held a three-day evidentiary hearing.   Defendants called Judge Turner to testify and elicited wide-ranging testimony from Judge Turner about his mental processes in setting secured money bail in particular cases, including amounts above what defendants could afford to pay.   Doc. 136 at 291:22–292:17, 294:7–23; *see also* Doc. 143 at 413:1–414:16.   Counsel for Defendants also elicited testimony about whether specific factual scenarios are "typical," Doc. 136 at 294:11–13, 297:18–22; arrestees' backgrounds and level of sophistication, *id.* at 289:14–21; a summary of questions defendants asked him at specific initial appearances, *id.* at 288:1–289:8; why particular bond amounts are higher or lower than other bond amounts in the bail schedule, Doc. 143 at 366:2–10; why a typical defendant fails to appear, *id.* at 368:14–21; *see also id.* at 414:17–21; his opinions

about the efficacy and purpose of secured money bail, Doc. 143 at 366:24–368:5; *see also id.* at 434:9–23; and the practical barriers to appointing counsel at initial appearances, *id.* at 442:14–444:5; *see also id.* at 409:23–410:22, 411:25–412:8. Judge Turner also provided testimony on cross-examination about the process by which the Standing Order was promulgated, *id.* at 387:6–389:17; his understanding of his constitutional obligations in setting conditions of release, *id.* at 389:18–390:7, 395:8–18, 396:12–19, 417:6–418:6; his intentions and motivations in setting secured money bail, *id.* at 393:2–4, 393:21–25, 394:1–11; why he found one arrestee non-indigent at a recent initial appearance, *id.* 430:6–23; and alternatives to pretrial detention, *id.* at 432:20–24.  He also offered to give the Court "representative examples" of the types of cases and the typical defendant he sees "on an average day." *Id.* at 399:5–21.[3]

---

[3] Additional Judicial Defendants have provided testimony on issues relevant to this Motion: Defendants Magistrate White, Magistrate Black, and Clerk McSwain previously testified in state court habeas hearings brought by former named plaintiffs in this case.  *See* Doc. 31-2 (Transcript of February 1, 2017 Hearing in *Parris v. Gentry*); *see also* Transcript of February 13, 2017 Hearing in *Schultz v. Gentry*, CV-2017-900034 ("Schultz Transcript"), attached to the Motion to Compel as **Appendix G** (Doc. 214-7).  In the *Parris* hearing, Magistrate Black testified about when and how she conducted initial appearance hearings, Doc. 31-2 at 16:12–21, 17:13–18:21, 19:1–8, 21:6–22:3; the specifics of Mr. Parris' initial appearance hearing, which she conducted, *id.* at 15:5–16:5, 19:9–20:9, 22:4–8; and when and how bond conditions are set, *id.* at 20:10–25.  Magistrate White testified about procedures for signing warrants and setting bond conditions, *id.* at 25:22–28:24, 29:23–30:15; initial appearance procedures, *id.* at 28:25–29:15; and details about Mr. Parris' case, in which she signed the warrant and set the initial bond amount, *id.* at 24:22–25:25.

In the *Schultz* hearing, Magistrate White again testified as to the process for signing warrants and setting bond, Schultz Transcript at 13:25–14:11, 16:1–15, 18:5–19:18, 20:11–22:1; details about Mr. Schultz's case, in which she signed the warrant and set the bond, *id.* at 15:7–12; and her past practices in setting bail in other cases, *id.* at 19:19–20:2.  Magistrate Black testified about when

Counsel for defendants did not object to these questions on privilege grounds at the injunction hearing.  Instead, Defendants relied on Turner's testimony and declaration (as well as Judge Nicholas's representations in the Standing Order) in submitting their proposed factual findings and conclusions of law, which were emailed to the Court and are attached to the Motion to Compel as **Appendix H** (Doc. 214-8).

On September 4, 2018, the Court entered a Memorandum Opinion finding that Defendants' post-arrest practices "deprive indigent criminal defendants in Cullman County of equal protection of the law" and "substantive and procedural due process," Doc. 159 at 30, 40–41, and issued a preliminary injunction, Doc. 164.

Defendants then filed notices of appeal, Docs. 165, 168, and motions to stay discovery, Docs. 175, 176, and attached new declarations from Defendants Turner and White and non-party Judge Nicholas, *see* Docs. 175-1, 175-2, 175-3.[4]  In these

---

and how she conducted initial appearance hearings, *id.* at 25:21–26:25; the specifics of Mr. Schultz's initial appearance hearing, which she conducted, *id.* at 27:1–28:25; and procedures for setting bail pursuant to a Bail Request form, *id.* at 29:22–30:8.  Finally, Clerk McSwain testified about the training staff in the clerk's office receives, *id.* at 31:20–32:15; policies and procedures for setting bond conditions, *id.* at 32:16–23, 38:4–11; procedures for setting bail pursuant to a Bail Request form, *id.* at 33:8–20; details about Mr. Schultz's case, in which she processed a Bail Request form, *id.* at 33:21–35:14, 36:2–37:1, 38:12–23, 42:9–43:4; the bounds of her authority to set bond, *id.* at 35:15–36:1; the purpose of setting cash bonds, *id.* at 37:2–7; and her opinions about setting bond in certain kinds of cases, *id.* at 40:4–41:11.

[4] The Court struck these documents from the record as improperly submitted post-hearing evidence.  *See* Doc. 191.  Plaintiff does not cite to these documents in reliance on the information contained within them, but only to note that the Judicial Deponents have previously made statements about the same issues their counsel objected to during the test depositions.

declarations, Judicial Deponents set forth additional justifications for their reliance on a secured money bail schedule, Doc. 175-1 at 3 ¶ 9, while also attempting to supplement or correct their testimony at the preliminary injunction hearing with information about particular findings that Judge Turner made on a specific Bail Request Form, *see* Doc. 175-3, and the amount of time that Judge Turner spent on one weekend day conducting initial appearances following the entry of the injunction, Doc. 175-2 at 2 ¶ 5.  After this Court denied the motions to stay, Doc. 198, the Judicial Defendants responded to written discovery about their practices and beliefs concerning secured money bail.  *See* Doc. 207-1; *see also* Doc. 207 at 8 (admitting that "the Judicial Defendants have . . . given substantive responses to all of Plaintiff's written discovery").

On January 23, 2019, Plaintiff noticed depositions for each of the Judicial Defendants as well as non-party Circuit Court Judge Greg Nicholas.  Docs. 205-1, 207-4.  The following day, counsel for the Judicial Deponents sent Plaintiff a letter objecting for the first time to any discovery that "seeks testimony concerning judicial acts" because such testimony "would infringe on their absolute rights to judicial immunity from suit." Docs. 205-2, 207-5.  After the Parties were unable to reach a resolution through letters and teleconference, *see* Doc. 205-3 at 1, they requested a teleconference with the Court, Doc. 205, which was held on February 7, 2019, *see* Doc. 206.

The Court preliminarily advised the Parties that it was unlikely to find that the Judicial Defendants were absolutely immune from discovery on the basis of judicial immunity, but reserved final judgment following further briefing.  The Court suggested that the Parties take "test" depositions to allow the Court to rule on specific objections made on the record to specific questions.

On February 8, 2019, Judicial Defendants filed a motion for a protective order. Doc. 207.  Notwithstanding extensive testimony about the same subject matter at the preliminary injunction hearing, Defendants argued that judicial immunity protects them from having to answer any deposition questions about their judicial acts, regardless of "whether that inquiry is at a general or a specific level."  *Id.* at 9. Plaintiff responded in opposition to the motion, citing numerous cases holding that judicial immunity does not extend to suits seeking declaratory relief.  Doc. 208 at 2. Judicial Defendants' motion remains pending before the Court.

The Parties proceeded with two "test" depositions: Plaintiff deposed Magistrate White on February 26, 2019, and Judge Turner on February 27, 2019.[5] At the outset of each deposition, Defendants objected "to th[e] deposition[s] going forward both because there is a motion for a protective order pending that raises judicial immunity . . . [and] on judicial privilege grounds."  Transcript of Deposition

---

[5] Plaintiff withdrew the previously-noticed depositions of Magistrate Black, Circuit Court Clerk McSwain, District Court Judge Chaney, and Circuit Court Judge Nicholas to give the Court time to rule on the Motion for Protective Order and this Motion.

of Joan White ("White Depo") at 6:20–7:3, attached to the Motion to Compel as **Appendix A** (Doc. 214-1); *see also* Transcript of Deposition of Judge Wells Turner ("Turner Depo") at 6:19–7:2, attached to the Motion to Compel as **Appendix B** (Doc. 214-2).   Although Defendants argued that "the deposition itself should be completely covered by the privilege," White Depo at 8:13–16, they allowed the depositions to go forward and raised their privilege objections on a question-by-question basis. *See, e.g.*, White Depo at 22:12–16; Turner Depo at 17:5–10.  Counsel for Defendants objected to questions falling into the following four categories: (1) judicial privilege objections to questions regarding facts or generalized policies and procedures; (2) judicial privilege objections to questions regarding specific adjudications; (3) legislative privilege objections to questions regarding generalized policies and procedures; and (4) legislative privilege objections to questions regarding the promulgation of bail schedules and the Standing Bail Order.[6]

## II.   LEGAL STANDARD

Rule 30 of the Federal Rules of Civil Procedure authorizes Plaintiff to "depose any person," subject to the scope of Rule 26(b) and other requirements.  Fed. R. Civ.

---

[6] Objections falling into these categories are attached to the Motion to Compel as **Appendices C, D, E, and F**, respectively (Docs. 214-3, 214-4, 214-5, 214-6).  Plaintiff has also attached the actual deposition transcripts as Appendices A and B.  Objections that that fall within category 1 are highlighted in yellow in the transcripts; objections that fall within category 2 are highlighted in purple; objections that fall within category 3 are highlighted in green; and objections that fall within category four are highlighted in blue.

P. 30(a)(1).  If a deponent refuses to answer specific questions, Rule 37 permits a party to file a motion to compel oral testimony after conferring in good faith with the deponent.  Fed. R. Civ. P. 37(a)(1), (3)(C).  A district court's decision to grant or deny a motion to compel is "committed to the discretion of the trial court" and will not be overturned "absent a finding of abuse of that discretion to the prejudice of a party."  *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984) (internal citation and quotation marks omitted).

## III.  <u>ARGUMENT</u>

### A. Judicial Privilege

Judicial privilege is a "qualified" privilege, *In re Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit*, 783 F.2d 1488, 1520 (11th Cir. 1986), that "primarily protects judicial decision-making in the context of adjudicating particular cases," *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 7156071, at *4 (E.D. La. Dec. 8, 2016); *see also In re Enf't of Subpoena*, 972 N.E.2d 1022, 1033 (Mass. 2012) (Judicial privilege "covers a judge's mental impressions and thought processes in reaching a judicial decision, whether harbored internally or memorialized in other nonpublic materials.").[7]  The

---

[7] "Some state courts have held that the judicial deliberative process privilege is absolute. *E.g., In re Enforcement of Subpoena*, 463 Mass. at 174. However, the Eleventh Circuit held in the leading case in the federal courts that the privilege is a qualified one, which does not prevent disclosure in every instance."  *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 7156071, at *5 (E.D. La. Dec. 8, 2016).

privilege also extends to "communications among judges and others relating to official judicial business such as, for example, the framing and researching of [legal] opinions, orders, and rulings." *In re Certain Complaints*, 783 F.2d at 1520; *see also In re Enf't of Subpoena*, 972 N.E.2d at 1033–34 (noting that judicial privilege also covers "confidential communications among judges and between judges and court staff made in the course of and related to their deliberative processes in particular cases"). As one district court explained, "[t]he privilege merely protects" judicial officers "from answering questions that probe the reasons for the decisions they made" in particular adjudications. *Irons v. Sisto*, No. CIV S-05-0912, 2007 WL 4531560, at *5 (E.D. Cal. Dec. 18, 2007); *see also United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005) (judicial privilege applies only when the decision is "adjudicative in nature"). Because the purpose of the privilege is to protect "confidentiality" in the adjudication of particular cases, *In re Certain Complaints*, 783 F.2d at 1520; *see also In re United States*, 463 F.3d 1328, 1332 n.4 (Fed. Cir. 2006) (same), it does not extend to general policy questions or a judicial officer's "understanding of their powers and responsibilities pursuant to all applicable laws, and how they interpret those powers and responsibilities in carrying out their duties," *Lake Cty.*, 233 F.R.D. at 528 (quotation marks omitted). Nor does the privilege extend to "a judge's memory of nondeliberative events in connection with cases in which the judge participated," *In re Enf't of Subpoena*, 972 N.E.2d at

1033, or "statements of fact" that "do[] not disclose [the judicial officers'] deliberations, mental processes or the reasoning for his decisions," *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660, 2016 WL 813709, at *2 (S.D. Ill. Mar. 2, 2016) (noting that judicial disclosure of such information would not waive the privilege because such information is not protected by the privilege).

"Like any testimonial privilege," the Eleventh Circuit has held that "the judicial privilege must be harmonized with the principle that 'the public . . . has a right to every man's evidence.'" *In re Certain Complaints*, 783 F.2d at 1521 (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)); *see also In re Grand Jury*, 821 F.2d 946, 957 (3d Cir. 1987) ("[T]he privilege applies only 'to the very limited extent' that the 'public good' in confidentiality transcends the value of 'utilizing all rational means for ascertaining truth.'" (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980))). "A party raising a claim of judicial privilege has the burden of demonstrating that the matters under inquiry fall within the confines of the privilege." *In re Certain Complaints*, 783 F.2d at 1520. Once the deponent has met this burden, "the investigating party" may overcome the privilege by showing "[1] the importance of the inquiry for which the privileged information is sought; [2] the relevance of that information to its inquiry; and [3] the difficulty of obtaining the desired information through alternative means." *Id.* at 1522. "The court then must weigh the investigating party's demonstrated need for the

information against the degree of intrusion upon the confidentiality of privileged communications necessary to satisfy that need." *Id.*

Finally, the judicial privilege "is not absolute; it can be waived." *UnitedHealthcare Ins. Co. v. Azar*, 316 F. Supp. 3d 339, 348 (D.D.C. 2018). A party waives the "privilege by either previously producing the requested documents or by previously providing testimony as to the same subject matter." *Fairholme Funds, Inc. v. United States*, 128 Fed. Cl. 410, 435 n.8 (2016), *vacated in part on other grounds sub nom. In re United States*, 678 F. App'x 981 (Fed. Cir. 2017) (citing *Alpha I, L.P. v. United States*, 83 Fed. Cl. 279, 290 (2008)).

### 1. Category 1: Judicial Privilege Does Not Apply to Any Questions that Do Not Pertain Directly to Particular Adjudications.

Questions that fall within the first category,[8] *i.e.*, generalized fact questions about Defendants' practices or procedures or their opinions about those practices or procedures, are not protected by judicial privilege because these questions do not require Defendants to divulge information about their mental process or deliberation in any specific adjudication. The vast majority of the questions Magistrate White and Judge Turner objected to on judicial privilege grounds fall within this category; thus the Court should order the Judicial Deponents to answer questions within this category in these and future depositions.

---

[8] *See* Appendix C, Doc. 214-3.

The questions in the first category seek information about facts (*i.e.*, what the deponent generally tells arrestees during initial appearance hearings), how procedures or policies are executed (*i.e.*, how release conditions are generally determined at the time a warrant was issued), or opinions about general policies, procedures, or practices (*i.e.*, why a defendant's charge is relevant to a bail decision). None of these questions seek information about "particular cases," *Cain*, 2016 WL 7156071, at *4; *In re Enf't of Subpoena*, 972 N.E.2d at 1033, or "communications among judges and others relating to . . . the framing and researching of [legal] opinions, orders, and rulings," *In re Certain Complaints*, 783 F.2d at 1520. For example, questions such as "[w]hat would you say to the defendant at these [initial appearance] hearings?" White Depo at 78:11–12; "how did Cullman County determine the bond for people who were arrested pursuant to a warrant?" *id.* at 54:10–12; "how frequently do defendants miss court because they're incarcerated in another jurisdiction?" Turner Depo at 46:3–5; or "do you inform arrestees of the 14 different factors that Rule 7.2 requires the Court to consider at the initial appearance?" *id.* at 112:6–9, simply seek *factual* information within the deponent's personal experience. Such questions regarding "statements of fact," *Hale*, 2016 WL 813709, at *2, based on "a judge's memory of nondeliberative events," *In re Enf't of Subpoena*, 972 N.E.2d at 1033—including the questions about how initial

appearances are generally conducted and what information is gathered at the initial appearance, *see, e.g.*, White Depo at 78:15–18—are not covered by the privilege.

Similarly, questions regarding a judicial actor's opinions about general processes—as opposed to specific adjudications—do not implicate the privilege: questions about deponents' "understanding of their powers and responsibilities pursuant to all applicable laws, and how they interpret those powers and responsibilities in carrying out their duties, is [not] protected by any privilege at all, let alone the deliberative process or mental process privilege." *Lake Cty.*, 233 F.R.D. at 528 (quotation marks omitted).  Thus questions such as, "[i]n your opinion, does representation by counsel at a hearing on a motion for bond reduction make a difference?" Turner Depo at 66:5–7; "[d]o you think it is important for your bail decisions to be as accurate as possible?" *id.* at 72:14–15; "[w]hat is your understanding of the legal standard for determining whether a person is unable to afford secured money bail?" *id.* at 126:11–13; and, "[i]n your opinion . . . why are the options on this form relevant to your decision in considering a Bail Request form?" White Depo at 67:8–10, do not fall within the judicial privilege.

Because the category 1 questions do not seek information about judicial actors' mental processes in adjudicating specific cases, none of the questions are protected by the judicial privilege, and Plaintiff is entitled to responses to these questions from Judicial Deponents.

14

> i. *Judicial Deponents have waived any claim of judicial privilege with respect to questions about practices, procedures, and policies regarding bail.*

Even if these questions could be construed as implicating judicial privilege, the judicial privilege "is not absolute; it can be waived." *UnitedHealthcare Ins. Co.*, 316 F. Supp. 3d at 348; *see also Di Lapi v. City of New York*, No. 06-CV-2864, 2012 WL 37576, at *5 (E.D.N.Y. Jan. 6, 2012) (finding that "the mental process privilege can, like the deliberative process or executive privileges, be waived via public disclosure by quasi-judicial officers"). "No balancing of competing interests is required when the government has waived the deliberative process privilege by either previously producing the requested documents or by previously providing testimony as to the same subject matter." *Fairholme Funds, Inc*, 128 Fed. Cl. at 435 n.8.

Moreover, judicial privilege "was intended as a shield, not a sword." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994) (internal citations and quotation marks omitted). "[A] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Id.* As the Second Circuit has explained in the context of the Fifth Amendment, since an assertion of privilege "is an effective way to hinder discovery and provides a convenient method for obstructing a proceeding, trial courts must be especially alert to the danger that the litigant might have invoked the privilege

primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties." *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 84 (2d Cir. 1995).  "[S]elective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage."  *Info. Res., Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591, 593 (S.D.N.Y. 1998).

Counsel for Judicial Deponents objected 111 times on the grounds of privilege at Judge Turner's deposition, even though counsel elicited freewheeling testimony about the same subject matter at the preliminary injunction hearing.  For example, counsel for Judicial Deponents instructed Judge Turner not to answer questions about his opinions about the efficacy of secured money bail and reasons for relying on secured money bail, Turner Depo at 34:8–21, 44:2–20; why defendants miss court, *id.* at 46:3–47:22, 51:9–52:3; indigency, *id.* at 125:21–126:15; the length of a typical initial appearance, 166:14–168:22, and the level of sophistication of defendants that he encounters at the initial appearance, *id.* at 59:18–62:3.  However, counsel for Judicial Defendants elicited testimony from Judge Turner about these same topics at the preliminary injunction hearing and relied on that testimony (as well as Judge Turner's declaration, *see* Doc. 122-1) in submitting their proposed factual findings and conclusions of law.  *See supra* pp. 3–5; Appendix H, Doc. 214-8.  Counsel for Judicial Defendants also attempted to file a second declaration from

16

Judge Turner about the length of time he spent conducting initial appearances one weekend following the entry of the injunction, even though his counsel objected to similar questions at his deposition. *Compare* Doc. 175-2 at 2 ¶ 5, *with* Turner Depo at 166:14–168:22.

Moreover, this Court should find that other Judicial Defendants have waived their ability to broadly invoke judicial privilege at future depositions. For example, Magistrate White, Magistrate Black, and Clerk McSwain previously testified in state court habeas hearings brought by former named plaintiffs in this case. In these hearings the Judicial Defendants discussed their roles in setting bond conditions and conducting initial appearance hearings; their opinions about the purpose and role of bail and bond conditions; the procedures for signing warrants, Bail Request forms, and the boundaries of their authority under Alabama law; and details about specific cases in which they had set bond or conducted initial appearances. *See supra* note 3. Clerk McSwain also submitted a declaration in support of the Judicial Defendants' motion to stay the preliminary injunction, Doc. 175-3, and Judge Nicholas filed a Standing Order that outlines his opinions about the purpose and the efficacy of secured money bail, Doc. 122-1. Collectively, Judicial Defendants have also provided testimonial responses to requests for admission and interrogatories, including to questions about their opinions regarding the efficacy of secured money bail. *See* Doc. 207-1 at 21–25 (Interrogatory Nos. 1–2).

17

Thus, even though Plaintiff maintains that judicial privilege does not apply to any of the questions in category 1, *see supra* Part III.A.1, to the extent the Court disagrees, Judicial Deponents have waived the privilege by repeatedly testifying about these issues.   This Court should not permit counsel for Judicial Defendants to selectively invoke judicial privilege to prevent Plaintiff from obtaining testimony about their post-arrest procedures while permitting Defendants to introduce testimony for self-serving purposes to bolster their defense.

### 2. Category 2: This Court Should Compel Deponents to Answer Plaintiff's Few Questions that Do Implicate Judicial Privilege Because the Answers to the Questions Are Important, Relevant, and Cannot be Obtained from Other Sources.

Mr. Hester asked a limited number of questions that he concedes are covered by judicial privilege.  *See* Appendix D, Doc. 214-4.  Nevertheless, this Court should find that Plaintiff may overcome the qualified judicial privilege because the answers to these kinds of questions are (1) important, (2) relevant, and (3) cannot be obtained from other sources.  *See In re Certain Complaints*, 783 F.2d at 1522.

*First*, "the importance of [Plaintiff's] inquiry" is great.   *In re Certain Complaints*, 783 F.2d at 1522.  As one district court explained, "[s]pecial caution should be exercised in recognizing a privilege in a civil rights case because . . . civil rights actions [are] designed to ensure that state and county officials may not exempt themselves from the very laws which guard against their unconstitutional conduct by claiming that state law requires all evidence of their alleged wrongdoing to remain

confidential." *Cain*, 2016 WL 7156071, at *6; *see also id.* at *7 ("As to the specific proportionality factors, the issues at stake are important matters of civil rights and public interest.").

Information about why the Judicial Deponents make specific decisions in particular bail hearings is in furtherance of Plaintiff's Section 1983 claims, which are quintessential public interest claims, *see Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014); *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). Furthermore, as this Court has already found, the consequences of the harms Plaintiff seeks to address are "significant." Doc. 159 at 30. Thus, the first factor in the balancing test weighs in Plaintiff's favor. *Cf. Cain*, 2016 WL 7156071, at *6 (holding that Plaintiffs' claims that defendants operated a debtor's prison "raise serious constitutional concerns of significant public interest").

*Second*, questions such as why a bond was set at a particular amount, *see* White Depo at 73:18–19, or what notations on initial appearance forms mean, *id.* at 83:4–9, are relevant to Plaintiff's Equal Protection and Due Process claims, *see In re Certain Complaints*, 783 F.2d at 1522 (noting second factor is relevance). For example, these questions are relevant to whether Defendants set bond conditions arrestees could not afford in violation of their rights to Equal Protection and Due Process; whether Judicial Defendants make the substantive findings at initial appearance hearings that are required under the Due Process Clause; and whether

Judicial Defendants give arrestees an opportunity to be heard and present evidence in their own defense. Furthermore, in probing Judicial Deponents about their application of their policies and procedures in specific cases, Plaintiff can evaluate whether Judicial Deponents are, in fact, following the procedures they have formally adopted, and if not, what the implementation of those procedures looks like. The second factor, relevance, therefore weighs in Plaintiff's favor.

*Finally*, "obtaining the desired information through alternative means" is impossible. *In re Certain Complaints*, 783 F.2d at 1522. Plaintiff seeks information about what the Judicial Deponents consider in making their bail decisions, and why they come to particular conclusions. *See, e.g.*, White Depo at 83:17–20. Because the Order on Initial Appearance and Bond Hearing does not require the decision-maker to state *why* they made a particular decision, *see* Doc. 122-1 at 27–28, and because the form provides little space for the decision-maker to elaborate on written notes or comments, Plaintiff cannot obtain answers to these questions without testimony from the Judicial Deponents. Thus, Plaintiff can show that all three factors in the balancing test weigh in favor of allowing Plaintiff to ask these questions of Judicial Deponents.

### B. Legislative Privilege

Judicial Deponents objected to several questions at Judge Turner's deposition on the grounds of legislative privilege.

Legislative privilege applies to legislators or those with delegated rulemaking authority, *Supreme Court of Va. v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 734 (1980), and "protects the legislative process itself," *i.e.*, "[officials'] actions in the proposal, formulation, and passage of legislation," *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015). Whether an action is "legislative" requires a functional analysis to determine whether the actions "were integral steps in the legislative process." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998); *see also Bryant v. Jones*, 575 F.3d 1281, 1305 (11th Cir. 2009). Judicial Defendants have the burden to show the deponents were engaged in legislative rather than administrative functions and are entitled to the legislative privilege. *Bryant*, 575 F.3d at 1304 (party "claiming protection 'must show that such immunity is justified for the governmental function at issue'" (citation omitted)); *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392 (11th Cir. 1993).

Legislative acts "generally bear the outward marks of public decisionmaking, including the observance of formal legislative procedures." *E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 184 (4th Cir. 2011) (internal quotations and citations omitted). Acts such as "voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties." *DeSisto College, Inc. v. Line*, 888 F.2d 755, 765 (11th Cir. 1989); *see also Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992) (identifying "speech making on the floor of

the legislative assembly, preparing committee reports, and participating in committee investigations and proceedings" as "generally" legislative (citations omitted)); *but see Crymes v. DeKalb Cty., Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991) (voting "alone does not necessarily determine that [official] was acting in a legislative capacity"). "[M]ere administrative application of existing policies" is insufficient to establish legislative action. *Smith v. Lomax*, 45 F.3d 402, 406 (11th Cir. 1995).

Even if a proponent establishes that a privilege is applicable, however, the privilege is "qualified," *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015), and "may be overridden in circumstances where 'reason and experience' suggest that the claim of privilege should not be honored," *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 99–100 (S.D.N.Y. 2003) (citations omitted)). "The privilege must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y. 2012) (quotation marks omitted) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980); *Rodriguez*, 280 F. Supp. 2d at 93–94). Accordingly, courts must "balance the various competing interests to determine whether to apply the . . .

legislative privilege to shield the legislature's documents from discovery." *Rodriguez*, 280 F. Supp. 2d at 99–100 (internal citations and quotations omitted).

Though the Eleventh Circuit did not clarify the parameters of the relevant balancing inquiry in *In re Hubbard*, other federal courts have imported factors considered under deliberative process privilege: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Rodriguez*, 280 F. Supp. 2d at 101 (internal citations and quotations omitted); *see also Bethune-Hill*, 114 F. Supp. 3d at 338; *Favors*, 285 F.R.D. at 214 ("[T]he clear weight of authority hold[s] that the legislative privilege is qualified and subject to a judicial balancing test."); *Perez v. Perry*, No. SA-11-CV-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014); *Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011). "If consideration of the first four factors leads to the conclusion that they outweigh the risk addressed by the fifth . . . then the demanded document ought to be disclosed . . . ." *Favors v. Cuomo*, No. 11-CV-5632, 2013 WL 11319831, at *11 (E.D.N.Y. Feb. 8, 2013); *see also Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 167 (S.D.N.Y. 2017) (same).

The Eleventh Circuit has also acknowledged that "a state lawmaker's legislative privilege must yield in some circumstances where necessary to vindicate important federal interests." *In re Hubbard*, 803 F.3d at 1311–13; *see also Bethune-Hill*, 114 F. Supp. 3d at 335–36 (legislative privilege yields "where important federal interests are at stake," *i.e.*, "when a plaintiff proceeds against the *State* and seeks evidence to vindicate important *public* rights guaranteed by federal law" (emphasis in original)).

Finally, it is "well settled that the legislative privilege is a personal one and may be waived." *Favors*, 285 F.R.D. at 211 (quotation marks and citations omitted). "[T]he waiver of the privilege need not be explicit and unequivocal and may occur either in the course of the litigation when a party testifies as to otherwise privileged matters, or when purportedly privileged communications are shared with outsiders." *Id.* at 211–12 (quotation marks and citations omitted).

### 1. Category 3: Legislative Privilege Does Not Apply to Questions Regarding Generalized Policies and Procedures.

Counsel for Judicial Deponents objected on the basis of legislative privilege to questions that do not seek information about the adoption of any specific, "legislative-type rules," *Washington Suburban*, 631 F.3d at 184. *See* Appendix E, Doc. 214-5. For example, questions about the "process" for hypothetical, future changes to the Standing Order, Turner Depo at 93:20–23, are not covered by the privilege. *See Bryant*, 575 F.3d at 1304–05 ("privilege enures only" when legislator

is actually engaged in consideration, rejection, passage, or enaction of particular legislation); *cf. Lindley v. Life Inv'rs Ins. Co. of Am.*, No. 08-CV-379, 2009 WL 2245565, at *12 (N.D. Okla. July 24, 2009) (listing a "promise to vote a certain way . . . at a *future* date" as item "*not* covered by legislative privilege" (emphasis added)). Similarly, questions about whether the deponent is "aware of any law or statute that prevents Judge Nicholas from making changes to the standing order," Turner Depo at 94:3–5, do not probe into "actions in the proposal, formulation, and passage of legislation" and therefore are not covered by the privilege, *In re Hubbard*, 803 F.3d at 1308; *cf. Lake Cty.*, 233 F.R.D. at 528 (officer's "understanding of their powers and responsibilities pursuant to all applicable laws" not covered by deliberative process privilege).

### 2. Category 4: Legislative Privilege Does Not Apply to the Standing Order or Bail Schedules, and Plaintiff Is Entitled to Answers.

Judicial Deponents may not invoke legislative immunity to avoid answering questions about their prior bail schedules or the Standing Order, because these are not "legislative acts."  Though the Alabama legislature has delegated rulemaking authority to the Alabama Supreme Court, *see* Ala. Code §§ 12-2-7(4), 12-2-19, a similar delegation has not been made to Judicial Deponents.  Alabama Rule of Criminal Procedure 7.2(b) establishes a bail schedule "as a general rule for circuit, district and municipal courts in setting bail" and authorizes courts to "exercise discretion in setting bail above or below the scheduled amounts" in particular cases.

Ala. R. Crim. P. 7.2(b).   This is a delegation of *administrative* authority, not legislative.   *Cf. Supreme Court of Va.*, 446 U.S. at 731–4 (holding that delegating "under Virginia law the issuance of the Bar Code" to the Virginia Supreme Court authorized the court to engage in legislative function of "rulemaking"); *see also* Doc. 122-1 at 8 (Standing Order) (citing Ala. Code §§ 12-1-2, 12-1-7, and 12-11-30(4) as authority for promulgating Standing Order, none of which vest Circuit Courts with rulemaking authority).

Furthermore, Judicial Defendants have repeatedly claimed that the adoption of the Standing Order was simply a means of ensuring that Cullman County conformed its practices with the existing Alabama Rules of Criminal Procedure. *See, e.g.*, Doc. 136 at 33:3–21 (stating that the "state's position" is that the Standing Order "is what our Rules of Criminal Procedure require," that "[t]he order essentially is following state law," and that "[t]hese are our Rules of Criminal Procedure that have been issued by the Supreme Court of the state").   But "mere administrative application of existing policies" is not legislative action; it's administrative. *Smith*, 45 F.3d at 406; *see also Crymes*, 923 F.2d at 1485.   Furthermore, the enactment of the Standing Order bears none of the "hallmarks of the legislative process," *Norse v. City of Santa Cruz*, 629 F.3d 966, 977 (9th Cir. 2010), nor "the outward marks of public decisionmaking," *Washington Suburban*, 631 F.3d at 184.   No commission or formal body debated the Standing Order, *see* Doc. 143 at 387:10–14 (Turner); no

vote was taken, *id.* at 387:17–18; no committee comments or reports regarding the changes were compiled, as generally occurs with legislation and the promulgation of rules of procedure, *see Yeldell*, 956 F.2d at 1062; and no public comment or notice period occurred, as is required for promulgation of agency rules and policies, *see, e.g.*, 5 U.S.C. § 553; Ala. Code §§ 41-22-1, *et seq.* Furthermore, as counsel for Judicial Deponents stated at the preliminary injunction hearing, "[the] standing order . . . can just be abrogated tomorrow." Doc. 136 at 33:19. For all these reasons, the Court should find that legislative privilege does not apply to any questions concerning Cullman County's written bail policies or schedules, including the Standing Order.

However, even if the promulgation of specific bail schedules and the Standing Order are legislative acts, under the five-part balancing test adopted by federal courts to determine whether the qualified privilege applies to specific information, *see Rodriguez*, 280 F. Supp. 2d at 101, Plaintiff is entitled to responses to questions within this category.

*First*, the information sought by Plaintiff is relevant to Plaintiff's claims. *See* Fed. R. Civ. P. 26(b). Judicial Deponents' "role in the events giving rise to the present litigation is central to the Plaintiff['s] claims. Unlike other cases, where . . . the legislative privilege may be employed to prevent the government's decision-making process from being swept up unnecessarily into the public domain, this is a

case where the decisionmaking process is the case." *Bethune-Hill*, 114 F. Supp. 3d at 339 (citations, quotation marks, and brackets omitted). For example, "why the standing order was entered," Turner Depo at 91:4–5, and who participated in its drafting are questions relevant to voluntary cessation and mootness. *See Flanigan's Enterprises, Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248 (11th Cir. 2017) (listing three factors for court to consider in determining whether post-litigation changes moot claims); *see also* Doc. 131 at 28–32 (arguing claims are not moot). Furthermore, information about *how* and *why* Defendants chose the bail amounts specified by the bail schedules in use in Cullman County, *e.g.*, Turner Depo at 30:3 (Standing Order bail schedule), 76:6–7 (prior bail schedule), is relevant to Plaintiff's claim that Defendants engage in wealth-based detention without regard to what an arrestee can afford to pay or whether the secured financial release condition is the least restrictive means necessary to reduce risk of flight and danger to the public, *see* Doc. 173 ¶¶ 80, 82 (allegations supporting Plaintiff's First Claim for Relief). Similarly, information about why, after the Standing Order went into effect, judges began conducting initial appearance hearings instead of magistrates, *see* Turner Depo at 104:3–7, 106:4–5, is relevant to Plaintiff's Sixth Amendment Right to Counsel claim, which focuses on whether the initial appearance is a "critical stage." *See* Doc. 173 ¶¶ 97–100 (Fourth Claim); *Bell v. Cone*, 535 U.S. 685, 696 (2002) (critical stage is one "that h[o]ld[s] significant consequences for the accused").

*Second*, "defendants also have not shown that this evidence could be obtained through other means." *Rodriguez*, 280 F. Supp. 2d at 102; *see also Favors*, 285 F.R.D. at 215 (same).  Due to the very nature of the processes giving rise to the creation of the bail schedules and Standing Order, the only persons who know the answers to Plaintiff's questions are those persons asserting a privilege.  Because the relevant documents do not state *why* certain changes were made, *e.g.*, why a bail amount was reduced from one schedule to the next, Turner Depo at 30:3, the only way for Plaintiff to ascertain this relevant information is through Judicial Deponents' testimony.  Furthermore, even if other evidence also supports Plaintiff's claims, "the availability of alternate evidence will only supplement—not supplant—the evidence sought by the Plaintiff[]." *Bethune-Hill*, 114 F. Supp. 3d at 341.

*Third*, "there can be no question that [Plaintiff's claims] raise[] serious charges about the fairness and impartiality of some of the central institutions of our state government," "suggest[ing] that the qualified legislative . . . privilege should be accorded only limited deference." *Rodriguez*, 280 F. Supp. 2d at 102.  As Plaintiff previously argued, *see supra* Part III.A.2, his class action, Section 1983 suit is one of the few means available to safeguard "important public rights guaranteed by federal law," *Bethune-Hill*, 114 F. Supp. 3d at 335–36, and to "vindicate important federal interests," *In re Hubbard*, 803 F.3d at 1311–13:  that is, the "fundamental" constitutional right to pretrial liberty, Doc. 159 at 24 (quoting *United States v.*

*Salerno*, 481 U.S. 739, 749–50 (1987)).  Because Plaintiff's claims "raise profound questions about the legitimacy of the [pretrial release] process," as well as "the viability of" the changes made to address Plaintiff's claims, *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *8, Plaintiff has demonstrated that the issues involved in this case are "serious." *Rodriguez*, 280 F. Supp. 2d at 101.

*Fourth*, "the role of the government in the litigation," *i.e.*, "[t]he decision of a legislator to defend himself or herself and to forgo invoking absolute legislative immunity . . . cut[s] against the legislator in the *Rodriguez* balancing analysis." *Favors*, 285 F.R.D. at 211.  "[I]f the role of the government . . . is not only direct, but voluntary, then, as a matter of fairness, the defendants' claims of privilege against compelled disclosure must be weakened."  *Id.*  Judicial Defendants have participated in this litigation for more than a year and a half, responding to requests for interrogatories and admissions and propounding testimony at the preliminary injunction hearing, *see generally supra* Part I, all the while conceding that they "are properly sued for declaratory relief in this matter," Doc. 207 at 8.

*Fifth*, and finally, the "possibility of future timidity by government employees who will be forced to recognize that their secrets are violable" does not outweigh the substantial interests articulated by Plaintiff in the first four factors.  *Citizens Union of City of New York*, 269 F. Supp. 3d at 167.  "Disclosure does not threaten pecuniary liability, since the [Judicial Deponents] generally are immune from such liability."

*United States v. Irvin*, 127 F.R.D. 169, 174 (C.D. Cal. 1989); *see also Stump v. Sparkman*, 435 U.S. 349, 359–60 (1978) (judicial immunity from damages actions).

Furthermore, courts have expressed doubt that "the occasional instance in which disclosure may be ordered in a civil context will add measurably to the inhibitions already attending legislative deliberations." *Irvin*, 127 F.R.D. at 174; *Favors*, 285 F.R.D. at 214 (same); *cf. United States v. Gillock*, 445 U.S. 360, 373 (1980) (disclosure of privileged information in the criminal context outweighs "speculative benefit to the state legislative process"). Though "legislative privilege protects a 'distraction' interest—to guard legislators from the burdens of compulsory process," *Bethune-Hill*, 114 F. Supp. 3d at 341–42, any distraction caused by deposition testimony pales in comparison to the overall distraction of this litigation, to which Judicial Defendants have submitted and fully participated in for the last year and a half, *see supra* Part III.A.1.i; *see also infra* Part III.B.2.i.

Because the first four factors weigh in Plaintiff's interest and vastly outweigh any harm to the Judicial Deponents under the fifth factor, Plaintiff is entitled to ask questions akin to those in Appendix F, Doc. 214-6.

### 3. Judicial Deponents Have Waived Any Claims of Legislative Privilege Regarding Questions About Bail Practices, Procedures, and Policies.

Like judicial privilege, *see supra* Part III.A.1.i, "[i]t is well settled that the legislative privilege is a personal one and may be waived." *Favors*, 285 F.R.D. at

211 (quotation marks and citations omitted). "[T]he waiver of the privilege need not be explicit and unequivocal and may occur either in the course of the litigation when a party testifies as to otherwise privileged matters, or when purportedly privileged communications are shared with outsiders." *Id.* (quotation marks and citations omitted). And, as with judicial privilege, legislative privilege was intended as a shield, not a sword, *see supra* p. 15: "courts have been loath to allow a legislator to invoke the privilege at the discovery stage, only to selectively waive it thereafter in order to offer evidence to support the legislator's claims or defenses." *Favors*, 285 F.R.D. at 211–12; *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *11 (subpoenaed non-party state legislators "cannot invoke the privilege as to themselves yet allow others to use the same information against plaintiffs at trial").

As detailed previously, Judicial Deponents have waived any legislative privilege through their repeated and voluntary testimony, both written and oral, on the issues of the Standing Order and their former pretrial detention policies. *See supra* Part III.A.1.i. Judge Turner gave "voluntary" testimony about the Standing Order at the injunction hearing, *e.g.*, Doc. 143 at 387:6–389:17, thereby "waiv[ing] any testimonial privilege" he might have otherwise asserted. *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 520 n.7 (3d Cir. 1985). He also submitted a declaration justifying the Standing Order changes. Doc. 122-1 at 5–6 ¶¶ 12, 14. Judge Nicholas similarly justified the changes to Cullman County's bail practices in the Standing

Order itself, *id.* at 8–9.  For these reasons, Judicial Deponents cannot now claim privilege to relevant follow-up questions regarding Cullman County's bail policies.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order holding that none of the previously discussed questions infringe on either judicial or legislative privilege and direct counsel for the Judicial Deponents to answer such questions in these and future depositions.

DATED: March 15, 2019.                Respectfully submitted,

/s/ Alexandra Jordan                                      
Alexandra Jordan
*On Behalf of Intervenor-Plaintiff Hester*

Samuel Brooke (ASB-1172-L60B)
Micah West (ASB-1842-J82F)
Alexandra Jordan (ASB-4624-X00X)
Neil Sawhney (La. Bar No. 38072)*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL  36104
P: (334) 956-8200
F: (334) 956-8481
E: samuel.brooke@splcenter.org
E: micah.west@splcenter.org
E: alexandra.jordan@splcenter.org
E: neil.sawhney@splcenter.org

Alec Karakatsanis (DC Bar No. 999294)*
Katherine Hubbard (Cal. Bar No. 302729)*
CIVIL RIGHTS CORPS
910 17th Street NW, Suite 500
Washington, DC  20006
P: (202) 930-3835

E: alec@civilrightscorps.org
E: katherine@civilrightscorps.org

Randall C. Marshall (ASB-3023-A56M)
Brock Boone (ASB-2864-L11E)
ACLU FOUNDATION OF ALABAMA, INC.
P.O. Box 6179
Montgomery, AL  36106-0179
P: (334) 420-1741
E: rmarshall@aclualabama.org
E: bboone@aclualabama.org

Brandon Buskey (ASB-2753-A50B)*
Andrea Woods (Wash. Bar No. 48265)*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
CRIMINAL LAW REFORM PROJECT
125 Broad Street, 18th Floor
New York, NY  10004
P: (212) 549-2654
E: bbuskey@aclu.org
E: awoods@aclu.org

*admitted pro hac vice*

**Attorneys for Intervenor-Plaintiff Hester**