FILED
2026 Mar-31  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |
|---|---|
| **BRADLEY HESTER, on behalf of himself and those similarly situated, Plaintiff-Intervenor,**<br><br>v.<br><br>**MATT GENTRY, *et al.*, Defendants.** | **Case No. 5:17-cv-00270-MHH** |

## MEMORANDUM OPINION

This case concerns the constitutionality of Cullman County, Alabama's bail practices.  Plaintiff Bradley Hester alleges that when he was arrested and detained on drug paraphernalia charges, he was detained at the Cullman County Jail for an extended time because he could not afford to pay the amount required for his release under the bond schedule that Cullman County had in place then.  Mr. Hester also alleges that he was denied assistance of counsel at his initial appearance, and he contends that a criminal defendant's initial appearance is a critical stage of a criminal prosecution.  Mr. Hester asserts that his extended detention violates the Fourteenth Amendment's Due Process and Equal Protection clauses because he was detained because of his indigency.  Mr. Hester also asserts that Cullman County's failure to provide the assistance of counsel at his initial appearance violates his Sixth

Amendment right to counsel.

Shortly after the original plaintiffs filed their complaint in this case, Cullman County revised its preliminary criminal procedures and adopted a new standing bail order. After this Court preliminarily enjoined Cullman County Sherriff Matt Gentry from enforcing the bail practices under the original and the revised bail schemes, the Eleventh Circuit Court of Appeals affirmed in part and reversed in part this Court's decision. *See Schultz v. Alabama*, 42 F.4th 1298 (11th Cir. 2022). Relying on the Eleventh Circuit's decision, the defendants have asked this Court to enter judgment in their favor on the pleadings and dismiss Mr. Hester's claims. (Docs. 274, 275). Mr. Hester opposes the defendants' motion, and he asks the Court to take judicial notice of his AlaCourt arrest records. (Doc. 299). This opinion addresses these requests.

The opinion begins with a summary of the procedural standard that governs the defendants' motions for judgment on the pleadings. Then the Court recounts the procedural history of this case and the relevant factual allegations in Mr. Hester's complaint. Next, the Court discusses Eleventh Circuit's opinion in this matter. Finally, applying the legal standards that govern Mr. Hester's constitutional claims and the law of the case established in *Schultz*, the Court analyzes Mr. Hester's factual allegations to determine whether the defendants are entitled to judgment on the pleadings. In doing so, the Court will resolve Mr. Hester's motion for judicial notice

2

of arrest records that post-date his complaint.

***

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Courts use the same standards to evaluate Rule 12(c) motions and Rule 12(b)(6) motions to dismiss. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). Therefore, in resolving a motion for judgment on the pleadings, a district court ordinarily must accept well-pleaded facts as true and view the allegations in the complaint in the light most favorable to the non-moving party. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

"If the parties present, and the court considers, evidence outside of the pleadings," a district court must convert a motion for judgment on the pleadings into a motion for summary judgment. *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023) (citing FED. R. CIV. P. 12(d)). A court may take judicial notice of matters outside of the pleadings without converting a motion for judgment on the pleadings into a motion for summary judgment. *Baker*, 67 F.4th at 1276;)); *see also Cunningham v. Dist. Att'y's Office for Escambia Cnty.,* 592 F.3d 1237, 1255 (11th Cir. 2010) (quoting *Andrx Pharm., Inc. v. Elan Corp.*, 421 F.3d 1227, 1232–33 (11th Cir. 2005)) ("Judgment on the pleadings is proper when no issues of material fact

3

exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts."). "Judicial notice is a means by which adjudicative facts not seriously open to dispute are established as true without the normal requirement of proof by evidence." *Dippin Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004) (citing FED. R. EVID. 201(a) and (b)).   Courts may take judicial notice "at any stage of the proceeding." FED. R. EVID. 201(d).

Under the law of the case doctrine, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Transamerica Leasing Inc. v. Inst. Of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005).   "Exceptions to this doctrine apply when substantially different evidence is produced, when there has been a change in controlling authority, or when the prior decision was clearly erroneous and would result in manifest injustice." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005).   On remand, a district court may address an issue that was not determined, explicitly or by necessary implication, in the appeal in the case, but a district court must follow the broad import of the appellate holding unless the evidence on remand shifts substantially.  *Transamerica Leasing*, 430 F.3d at 1332; *Jackson*, 405 F.3d at 1283.  Thus, in resolving the pending motions, the Court will consider the facts alleged in the pleadings in the light most favorable

4

to Mr. Hester, facts subject to judicial notice, and the Eleventh Circuit's decision in *Schultz v. Alabama*, 42 F.4th 1298 (11th Cir. 2022).

***

Several indigent Cullman County arrestees filed this action in 2017 to challenge Cullman County's bail practices. (Doc. 1).[1] Mr. Hester joined the action and filed an intervenor complaint against Cullman County Sheriff Matt Gentry, Circuit Clerk Lisa McSwain, Magistrate Amy Black, Magistrate Joan White, District Court Judge Kim Chaney, and District Court Judge Wells R. Turner III. (Docs. 94, 95).[2] Like the original plaintiffs, Mr. Hester challenged Cullman County's then-existing bail procedures. (Doc. 95).[3] A few weeks after Mr. Hester filed his complaint, in March 2018, Cullman County enacted a new standing criminal pretrial order that revised the county's bail procedures. (Doc. 129-36). Cullman County also revised several pretrial forms and the schedule of bond fees. (Doc. 122-1, p. 8; Doc. 129-37).

---

[1] Several of these plaintiffs no longer are parties to this action. (*See* docs. 69, 119).

[2] The parties have referred to Circuit Clerk Lisa McSwain, Magistrate Amy Black, Magistrate Joan White, District Court Judge Kim Chaney, and District Court Judge Wells R. Turner III collectively as "the judicial defendants." The Court will do so in this opinion.

[3] Mr. Hester also filed a motion for class certification and a motion for preliminary injunction. (Docs. 101, 102). Because this matter is before the Court on a motion for judgment on the pleadings, and these motions are not pleadings, the Court will not consider the substance of these motions. *See* FED. R. CIV. P. 7(a) (stating that "[o]nly these pleadings are allowed" and listing seven types of pleadings including a complaint and an answer); *Baker*, 67 F.4th at 1276.

Several months later, on September 13, 2018, the Court preliminarily enjoined Sheriff Gentry from enforcing the standing bail order, (Doc. 164), Sheriff Gentry and the judicial defendants appealed, (Docs, 165, 168), and Mr. Hester requested permission to amend his complaint, (Doc. 169).[4] On September 14, 2018, with the Court's permission, Mr. Hester filed his amended complaint. (Doc. 173). That complaint is his operative pleading.

In his September 2018 amended complaint, Mr. Hester names as defendants Cullman County Sheriff Matt Gentry; Lisa McSwain, the Circuit Clerk of Cullman County; Cullman County magistrates Joan White and Amy Black; and Cullman County District Judges Kim Chaney and Rusty Turner. (Doc. 173).[5] Mr. Hester alleges that on July 27, 2017, he was charged with possession of drug paraphernalia and was detained in jail from July 27 until August 3, 2017, because he "could not afford to pay the $1,000 bond required by the [then-applicable] bail schedule." (Doc. 173, p. 3, ¶ 3) (brackets added). Mr. Hester asserts three claims under the Fourteenth

---

[4] The Court later entered an order clarifying the preliminary injunction. (Doc. 197).

[5] Ms. White has passed away. (Doc. 250). The Court has not received a motion for substitution for her. Therefore, the Court dismisses the claims against Ms. White. *See* FED. R. CIV. P. 25(a)(1). This dismissal does not affect the claims against the remaining defendants. FED. R. CIV. P. 25(a)(2).

Also during the pendency of this litigation, Judge J. Chad Floyd was substituted as a defendant for Judge Chaney pursuant to Federal Rule of Civil Procedure 25(d). (Doc. 254). Therefore, Judge Chaney no longer is a party to this action.

Amendment:  a claim for a violation of his right to due process and equal protection of the laws, (Count I); a claim for a violation of his right to substantive and procedural due process concerning an individualized release hearing, (Count II); and a claim for a violation of his right to due process concerning a prompt release hearing, (Count III).  (Doc. 173, pp. 23–26).  Mr. Hester also alleges a violation of his Sixth Amendment right to counsel, (Count IV).  (Doc. 173, pp. 26–27).  Mr. Hester brings his constitutional claims pursuant to 42 U.S.C. § 1983, (Doc. 173, p. 4), and he asserts his claims on behalf of himself and a putative class of individuals arrested in Cullman County and subject to the county's bail scheme, (Doc. 173, pp. 17-22).  Mr. Hester defined the putative class as "[a]ll arrestees who are or who will be jailed in Cullman County who are unable to pay the secured monetary bail amount required for their release."  (Doc. 173, p. 17).

The defendants moved to stay this litigation while their appeals were pending. (Docs. 175, 176).  Sheriff Gentry filed a motion to dismiss Mr. Hester's amended complaint, (Doc. 183), and the judicial defendants filed a motion for a more definite statement of the amended complaint, (Doc. 184).  The Court denied the motions to stay.  (Doc. 198).

The Eleventh Circuit Court of Appeals reversed the order enjoining Sheriff Gentry from following Cullman County's bail procedure.  (Doc. 260-1).  Mr. Hester filed a petition for writ of certiorari to the United States Supreme Court.  (Doc. 265).

The Supreme Court denied the writ. (Doc. 266). The defendants then filed their motions for judgment on the pleadings, (Docs. 274, 275), and Mr. Hester filed his motion for judicial notice, (Doc. 299).[6]

*** 

In its opinion in this case, the Eleventh Circuit stated that Mr. "Hester was neither arrested nor imprisoned under Cullman County's [March 2018] bail system. And by the time of the hearing on the preliminary injunction, [Mr.] Hester had been released." *Schultz*, 42 F.4th at 1318–19 (brackets added). Therefore, Mr. Hester could not "trace his injury to the [March 2018] bail system," and thus could not challenge the 2018 bail system on an as-applied basis." *Schultz*, 42 F.4th at 1319 (brackets added) (first citing *Pugh v. Rainwater*, 572 F.2d 1053, 1058–59 (5th Cir. 1978) (en banc); then citing *Walker v. City of Calhoun*, 901 F.3d 1245, 1267 n.13 (11th Cir. 2018)).[7] The Eleventh Circuit noted that the preliminary injunction hearing took place 16 days after Cullman County enacted the revised bail order, so there was a limited factual record concerning Cullman County's bail practices under

---

[6] The complaint before the Eleventh Circuit concerned Mr. Hester's 2017 arrest. (Doc. 95). Mr. Hester's current complaint concerns the same July 2017 arrest. (Doc. 173). After the Eleventh Circuit issued its decision, Mr. Hester was arrested on August 30, 2023 and was subject to the March 2018 standing bail order. (Doc. 299).

[7] In *Pugh* and *Walker*, the plaintiffs were limited to facial constitutional challenges because legislatures modified the challenged conduct while the cases were pending. *Pugh*, 572 F.2d at 1058–59; *Walker*, 901 F.3d at 1254; *see also Schultz*, 42 F.4th at 1319.

the March 2018 procedures. *Schultz*, 42 F.4th at 1319 ("And because a factual, as-applied challenge 'asserts that a statute cannot be constitutionally applied in particular circumstances, it necessarily requires the development of a factual record for the court to consider.'") (quoting *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009)).  The Eleventh Circuit stated:

> In this case, both the party—Hester—and the facts of his case are tied to the now-defunct bail scheme in Cullman County, as the new scheme had been in place only for a short while before the district court ruled on its constitutionality.  Construing Hester's challenge as an as-applied challenge to the new bail-scheme, given the record before us, would violate core justiciability principles.  Hester's lawsuit will succeed only if Cullman County's new scheme is facially unconstitutional—i.e., if Hester can "establish that no set of circumstances exists under which the [bail scheme] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

*Schultz*, 42 F.4th at 1319 (brackets in *Schultz*).

Examining the interplay between standing and mootness, the Eleventh Circuit considered whether the March 2018 bail order rendered Mr. Hester's constitutional challenge moot or prevented him from "raising any challenge to the new Standing Bail Order policies." *See Schultz*, 42 F.4th at 1319–20.  The Eleventh Circuit held that the 2018 bail order rendered Mr. Hester's as-applied challenge to the former bail order moot. *Schultz*, 42 F.4th at 1320.  To evaluate whether the March 2018 bail procedures rendered the entire case moot, the Eleventh Circuit looked to the *Walker* decision.  The Eleventh Circuit explained:

> [I]n *Walker*, the plaintiff was arrested and detained, but could not post

9

bail. 901 F.3d at 1251. While still detained, the plaintiff sued the city, alleging that the city's bail procedures were unconstitutional. *See* [*Walker*, 901 F.3d] at 1251–51. The day after filing suit, the plaintiff was released, and while the plaintiff's case was pending, the city altered the bail policies by issuing a standing bail order. [*Walker*, 901 F.3d] at 1252. On appeal, we concluded that the district court abused its discretion in enjoining the standing bail order, reaching the merits of the plaintiff's claim even though he was detained under the city's former bail procedures. [*Walker*, 901 F.3d] at 1269, 1272; *accord* [*Walker*, 901 F.3d] at 1267 n.13 (stating that the standing bail order facially passed constitutional muster). In doing so, we addressed the city's argument that the standing bail order, if constitutional, rendered the plaintiff's claim moot. *See* [*Walker*, 901 F.3d] at 1269–71. Specifically, the city contended that "because a new policy has been promulgated after this litigation began, which supplanted the original policy, the claim against the original policy [was] moot. [*Walker*, 901 F.3d] at 1269.

We found the city's argument without merit. We explained that "[v]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." [*Walker*, 901 F.3d] at 1270 (quoting *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1255 (11th Cir. 2017) (en banc), *abrogated on other grounds by Uzuegbunam v. Preczewski*, —— U.S. ——, 141 S. Ct. 792, 209 L.Ed.2d 94 (2021)). Rather, the case was moot only if this Court had "no reasonable expectation that the challenged practice will resume after the lawsuit is dismissed." [*Walker*, 901 F.3d at 1270] (quoting *Flanigan's*, 868 F.3d at 1255–56). We considered three factors to determine whether a reasonable expectation existed: (1) "whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate our jurisdiction," i.e., by examining "the timing of the repeal, the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it"; (2) "whether the government's decision to terminate the challenged conduct was 'unambiguous,' " i.e., "whether the actions that have been taken to allegedly moot the case reflect a rejection of the challenged conduct that is both permanent and complete"; and (3) "whether the government has consistently maintained its commitment to the new policy or legislative scheme." [*Walker*, 901 F.3d at 1270] (quoting

*Flanigan's*, 868 F.3d at 1257).  Based on our analysis of these factors, we concluded the case was not moot.  As to the first factor, we doubted the city intended to manipulate jurisdiction (as opposed to correcting a deficient policy) but explained that the city was unnecessarily secretive, as it failed to disclose the process to create the standing bail order. [*Walker*, 901 F.3d] at 1271. As for the second factor, we explained the city had not changed its bail policy through a legislative act; instead, a single judge had issued the new bail policy "and, while it is perhaps unlikely, we [could not] say that this judge might not revert to the original policy." [*Walker*, 901 F.3d at 1271]. And as to the third factor, we concluded that it did "not cut strongly either way" because the implementation of the policy was enjoined shortly after its creation by the district court. [*Walker*, 901 F.3d at 1271].

*Schultz*, 42 F.4th at 1321 (brackets added).  The Eleventh Circuit determined that under the *Walker* factors, the March 2018 bail order did not render the case moot. *Schultz*, 42 F.4th at 1321–22.

Turning to standing, the Eleventh Circuit recognized that "to establish standing, a plaintiff must have: '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Schultz*, 42 F.4th at 1319 (quoting *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1311 (11th Cir. 2021)).  The Eleventh Circuit held that Mr. Hester had standing to assert a facial challenge to the March 2018 bail order.  *Schultz*, 42 F.4th at 1320–21.  Therefore, the Eleventh Circuit considered Mr. Hester's constitutional arguments as those arguments applied to a facial challenge to the March 2018 bail procedures.

With respect to Mr. Hester's equal protection challenge, the Eleventh Circuit

11

explained that, "discrimination against the indigent, without more, does not implicate a suspect classification—and thus does not trigger strict scrutiny." *Schultz*, 42 F.4th at 1323 (citing *Maher v. Roe*, 432 U.S. 464, 471 (1977)). "[H]eightened scrutiny for claims of wealth discrimination" are reserved for "carceral punishment and ensuring access to judicial proceedings" in situations in which an indigent defendant is fully deprived of "a government benefit" because of the defendant's inability to pay for the benefit. *Schultz*, 42 F.4th at 1323 (brackets added) (citing *Jones v. Governor of Florida*, 975 F.3d 1016, 1030 (11th Cir. 2020) (en banc)). The Eleventh Circuit noted that "the right to pretrial release is not absolute," *Schultz*, 42 F.4th at 1323, and determined that "indigent pretrial detainees in Cullman County are not discriminated against solely based on their inability to pay, and neither do they suffer an absolute deprivation of a meaningful opportunity to obtain pretrial release." *Schultz*, 42 F.4th at 1324.

The Eleventh Circuit stated that pretrial detainees who could not afford bail were not discriminated against because of their indigency but were "being discriminated against for failure to ensure in the first instance their future appearance at trial." *Schultz*, 42 F.4th at 1324. The 2018 bail order "guarantees indigent arrestees an initial appearance and bail hearing before a circuit judge" at which the judge considers the detainee's "indigency, flight risk, and likelihood of appearing at trial." *Schultz*, 42 F.4th at 1324, 1327 (citing Ala. R. Crim. P. 7.2(a)). The 2018

bail order states that the judge should "impose the least onerous condition that will assure the purposes of bail are satisfied." *Schultz*, 42 F.4th at 1324. The Eleventh Circuit found that under the 2018 bail order, "[a]ll arrestees are presumptively entitled to pretrial release as soon as they make a showing that they will appear at trial—either by posting bail or by appearing at a hearing and attempting to show through other means that they will appear at trial." *Schultz*, 42 F.4th at 1324. The Eleventh Circuit concluded that because the 2018 bail order did not absolutely deprive indigent defendants of bail procedures, Cullman County's bail scheme was subject to rational review rather than heightened scrutiny. *Schultz*, 42 F.4th at 1330.

The Eleventh Circuit held that Cullman County's March 2018 bail system survived rational review because "states maintain not only a legitimate but a 'compelling interest in assuring the presence at trial of persons charged with crime,'" and Cullman County's bail system under the 2018 bail order was rationally related to that interest, *Schultz*, 42 F.4th at 1330 (quoting *Rainwater*, 572 F.2d at 1056). Therefore, the Eleventh Circuit rejected Mr. Hester's equal protection facial challenge to the March 2018 bail procedure.

With respect to Mr. Hester's due process challenge, the Eleventh Circuit held that Mr. Hester did not present a viable substantive due process claim because "[p]retrial detainees have no fundamental right to pretrial release. If they did, bail itself would be unconstitutional." *Schultz*, 42 F.4th at 1331–32.

13

Shifting to procedural due process, the Eleventh Circuit stated that procedural due process "'encompasses . . . a guarantee of fair procedure.'" *Schultz*, 42 F.4th at 1332 (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)) (alteration in *Schultz*). Generally, a procedural due process analysis "proceeds in two steps: 'We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Schultz*, 42 F.4th at 1332 (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). The second prong requires inquiry into the "nature of the private interest affected, the risk of erroneous deprivation, the value of additional safeguards, and the government's interest, including any burdens." *Schultz*, 42 F.4th at 1332 (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The Eleventh Circuit determined that "pretrial detainees in Cullman County [were] not deprived of due process at their bail determinations" because detainees received "a hearing before an impartial judge, notice of that hearing, and there [was] no evidence that [detainees were] being denied an opportunity to be heard at the hearing." *Schultz*, 42 F.4th at 1335 (brackets added). The Eleventh Circuit noted that a "judge's bail determination [could] be modified upon a showing of good cause, and the judge must make written findings of fact specifying which factors he considered in setting the amount of bail." *Schultz*, 42 F.4th at 1335 (brackets added). Accordingly, the Eleventh Circuit held that the 2018 bail order, on its face, does not

14

violate procedural due process.

*** 

The judicial defendants and Sheriff Gentry argue that they are entitled to judgment on Mr. Hester's operative complaint under *Schultz*. (Docs. 274, 275). To support his effort to maintain his claims as they relate to the March 2018 bail procedure, Mr. Hester asks the Court to take judicial notice of his 2018 arrest. (Doc. 299).

AlaCourt records show that Mr. Hester was arrested on June 18, 2018, and on August 30, 2023. For both arrests, Mr. Hester was subject to the March 2018 bail order. (Doc. 299). Courts may take judicial notice of AlaCourt records to support a party's factual allegations, but a court may not use judicial notice to amend the factual allegations in a complaint. *See Thompson*, 610 F.3d at 631 n.5 (citing *Bryant*, 187 F.3d at 1278 ("Because the Second Amended Complaint alleges violations of securities laws, we may also take judicial notice of relevant SEC filings.")). Mr. Hester's complaint is dated September 14, 2018. (Doc. 173). In it, Mr. Hester does not mention his June 2018 arrest. (Doc. 173). Though the parties participated in discovery while the defendants' appeal was pending before the Eleventh Circuit, Mr. Hester did not ask for permission to amend his complaint to add a claim regarding one or both of his arrests under the 2018 bail order. The Court may not use the tool of judicial notice as a substitute for a Rule 15 motion to amend pleadings. FED. R.

15

Cɪᴠ. P. 15(a); *Gilmour v. Gates*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citation omitted) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Therefore, the Court considers the defendants' motions for judgment on the pleadings by evaluating the factual allegations and claims in Mr. Hester's September 2018 amended complaint.  (Doc. 173).

The only material difference between the complaint that the Eleventh Circuit evaluated and the September 2018 complaint is Mr. Hester's new Sixth Amendment claim.  (*Compare* Doc. 95 *with* Doc. 173; *see also* Doc. 169).  Consequently, under the law of the case doctrine, the Eleventh Circuit's analysis in this case precludes Mr. Hester's equal protection and due process facial challenges to Cullman County's March 2018 bail procedures.  For his Sixth Amendment claim, Mr. Hester alleges that the defendants violated his fundamental right to counsel "by failing to provide assistance of counsel at the [2017] initial appearance hearing, at which a criminal defendant may be jailed based on an inability to" post bail.  (Doc. 173, p. 27, ¶ 100) (brackets added).  He asserts that initial appearances provide "the first opportunity" for a criminal defendant to "argue for [] pretrial release, which is [a] fundamental right" and states that an indigent defendant is denied a meaningful opportunity to avoid pretrial detention when deprived of counsel at an initial appearance.  (Doc.

16

173, p. 27, ¶ 99) (brackets added).  Mr. Hester alleges that pretrial detention of indigent criminal defendants renders those defendants less prepared for trial, makes those defendants more likely to plead guilty, and causes those defendants to receive longer prison sentences.  (Doc. 173, pp. 26–27, ¶ 98).

As with his Fourteenth Amendment claims, per *Schultz*, Mr. Hester may make only a facial Sixth Amendment challenge to the 2018 bail order.  *Schultz*, 42 F.4th at 1318–19.  To avoid judgment on the pleadings, Mr. Hester must show that "no set of circumstances exists under which the [bail scheme] would be [facially] valid" under the Sixth Amendment.  *Schultz*, 42 F.4th at 1319 (quoting *Salerno*, 481 U.S. at 745) (brackets in *Schultz*).

The March 2018 bail procedures provide that when an arrestee cannot afford to pay the amount required under the Rule 7.2 bail schedule to achieve pretrial release, the arrestee is entitled to an initial appearance hearing within 72 hours of the arrest.  (Doc. 129-36, pp. 5–8).[8]  During this hearing, the state court "may impose the least onerous condition or conditions . . . that will reasonably assure the defendant's appearance or that will eliminate or minimize the risk of harm to others

---

[8] Rule 7.2(b) of the Alabama Rules of Criminal Procedure contains a bail schedule for pretrial detainees.  The Alabama Supreme Court amended the schedule in January 2022. ORDER, RULE 7.2(b)  ALA.  R.  CRIM.  P.  (Ala.  Jan.  14,  2022) https://judicial.alabama.gov/docs/rules/Rule7_2(b)AlaRCrimPOrder.pdf.  Rule 7.2(b) states that, "[e]xcept where release is required in the minimum schedule amount pursuant to the Rules of Criminal Procedure, courts should exercise discretion in setting bail above or below the scheduled amounts."  ALA. R. CRIM. P. 7.2(b).  The Cullman County Bail Schedule in effect in March 2018 appears at Docs. 122-1, pp. 16–17 and Doc. 129-37.

or the public at large." (Doc. 129-36, pp. 5–6). In making its decision, "the Court may take into account" 14 factors. (Doc. 129-36, pp. 6–7).

"The most minimal requirement of procedural due process is that an accused at a critical stage of a criminal proceeding must be assured the right to counsel." *Johnson v. United States*, 344 F.2d 401, 411 (5th Cir. 1965) (collecting cases).[9] The March 2018 bail procedures do not state whether an initial appearance is a critical stage of a criminal proceeding for an indigent defendant, but the bail order requires indigent defendants to complete an Affidavit of Substantial Hardship before an initial appearance. (Doc. 129-36, p. 11) (stating that "[p]rior to" an initial appearance, "defendants shall complete an Affidavit of Substantial Hardship, Form C-10A"). The first page of that affidavit allows criminal defendants to request appointment of counsel. (Doc. 122-1, p. 21; Doc. 129-39, p. 2). The form Order on Initial Appearance and Bond Hearing requires the judge presiding over the initial appearance to make several findings regarding the defendant's right to counsel. (Doc. 122-1, p. 27; Doc. 129-40, p. 2). Because the bail order does not prohibit or otherwise impair an indigent defendant's ability to request appointment of counsel and because the bail order, through the required Affidavit of Substantial Hardship, provides indigent defendants an opportunity to request appointment of counsel at an

---

[9] Fifth Circuit decisions issued on or before September 30, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

initial appearance, Mr. Hester has not established that the March 2018 bail order violates the Sixth Amendment facially.

Mr. Hester argues that even if Sheriff Gentry and the judicial defendants are entitled to judgment on the pleadings on his Sixth Amendment and Fourteenth Amendment facial challenges to Cullman County's March 2018 bail procedures, he may challenge Cullman County's bail procedures on an as-applied basis as a representative of the putative class. (Doc. 282, pp. 23–31). A district court may not consider issues that a named plaintiff raises in a representative capacity if the district court is not satisfied that the named plaintiff has individual standing to raise the issue. *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("It is not enough that the conduct of which the plaintiff complains will injure someone.").

As noted, Mr. Hester defines the putative class as "[a]ll arrestees who are or who will be jailed in Cullman County who are unable to pay the secured monetary bail amount required for their release." (Doc. 173, p. 17). Mr. Hester alleges that he "seeks an injunction against Sheriff Gentry from prospectively jailing arrestees unable to pay secured monetary bail without an individualized hearing at which the arrestee has counsel and adequate procedural safeguards," safeguards which include "an inquiry into and findings concerning the arrestee's ability to pay, the suitability of alternative non-financial conditions of release, and a finding on the record that

19

any conditions of release are the least restrictive conditions necessary to achieve public safety and court appearance." (Doc. 173, p. 3). But these allegations concern the bail order that was in place in 2017 when Mr. Hester intervened. The Eleventh Circuit held that Mr. Hester's as-applied challenge to the 2017 bail order was moot, *Schultz*, 42 F.4th at 1320. That holding applies with equal force to a putative class member detained before Cullman County adopted the March 2018 bail procedures.

In his operative complaint, Mr. Hester did not attempt to assert a claim regarding Cullman County's March 2018 bail order, and he did not attempt to amend his complaint again after the parties engaged in discovery to add an as-applied challenge to the March 2018 bail order. In his September 2018 amended complaint, Mr. Hester, on behalf of the putative class, sought prospective injunctive relief, (Doc. 173, p. 28), from the bail order in effect in 2017 that, by September 2018, was mooted by the March 2018 bail order. Therefore, the pleadings do not provide a basis for an as-applied challenge to Cullman County's bail practices by Mr. Hester as a representative of a putative class of detainees.[10]

***

For the reasons discussed above, the Court denies Mr. Hester's motion to take judicial notice and grants the defendants' motions for judgment on the pleadings.

---

[10] Had Mr. Hester asserted, individually, a claim for damages regarding the period he was detained without bail under Cullman County's 2017 bail procedures, that damages claim would not have been mooted by Cullman County's March 2018 bail procedures.

20

The Clerk of Court shall please TERM Docs. 274, 275, and 299.  By separate order,

the Court will close this file.


**DONE** and **ORDERED** this March 31, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

21